## 62383. FORD MOTOR CREDIT COMPANY v. DOWDY.

DEEN, Presiding Judge.

The appellee obtained a Dodge van and a Chevrolet automobile from appellant's assignor on 36-month leases. He defaulted on both, the vehicles were repossessed and sold, and the appellant sued for damages for breach of the leases as set out therein. After trial a verdict was directed for the defendant, and plaintiff appeals.

The appellant properly states that the sole issue involved is whether the provisions of the Uniform Commercial Code, in particular Code § 109A-9—504 (3) requiring notice to the defaulting debtor in security transactions before sale of the collateral are applicable to this equipment lease. This in turn depends on whether the contract denominated a lease by the parties is a true lease or is a disguised secured transaction. If the lease is not a security transaction the notice provisions are inapplicable, and the sale was properly conducted.

The lease in each case after identifying the property states an initial payment, a rental security payment, and 36 monthly payments. It also states a "residual value" explained by testimony as being the dealer's projection of what the market value of the vehicle would be at the end of the lease. The contract further stipulates substantially the following: The lease-end responsibility of the lessee, after meeting all monthly payments, is to return the vehicle to the lessor, who will promptly sell it, deducting any necessary expenses from the amount received. If that net amount is more than the residual value, lessor pays lessee the difference. If it is less "the Lessee shall promptly remit the difference to the Lessor as additional rent." Both parties are thus locked into the position at lease-end of seeing to it that the lessor receives back the exact net depreciated market value of the vehicle as agreed to and projected at the beginning of the lease, regardless of what the true market value at the time of sale turns out to be. This amount is set by the lessor which drafted the agreement.

We are cited to Code § 109A-1—201 (37) defining a security interest. "Unless a lease . . . is intended as security, reservation of title thereunder is not a 'security interest'. . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." We note also that under Code § 109A-9—102 (2), Article 9 of the UCC, applies to a lease intended as security.

Whether it is intended as security is to be determined by the facts of each case; the name which the parties give it is not conclusive. Davis Bros. v. Misco Leasing, Inc. (1974) (Tex. Civ. App.) 508 SW2d 908, 76 ALR3d 1. That case further endorses the conclusion reached in Peco, Inc. v. Hartbauer Tool & Die Co., 500 P2d 708, 710 (1972): "We agree that the best test is a comparison of the option price with the market value of the equipment at the time the option is to be exercised. Such a comparison shows whether the lessee is paying actual value or acquiring the property at a substantially lower price." Other factors present in this case which are listed in Davis Brothers as quoted from In re Transcontinental Industries, Inc., 3 UCC Rep. 235 (N.D. Georgia 1965) as tending to establish that the transaction is a conditional sale are: the lessor's purchase of the equipment from a supplier; the requirement that the lessee be responsible for the payment of all taxes, insurance and expenses for repairs, an initial down payment, and an additional payment of security deposit.

On the other hand, as indicators of a true lease, may be argued the fact that the residual value at the end of three years, and the market value at the time of the actual sale (about two years) are not too far apart, although even then the market value was less than the stated "residual." Other indications of a true lease as quoted in the Davis Bros. case from In re Alpha Creamery Co., Inc., 4 UCC Rep. 794 (Mich., 1967) are not present here; there is no evidence which would indicate the relation between rental charges and depreciation, obsolescence or that the rentals were normal or that the lessee was not acquiring an equity in the leased chattel. This last item, however, might be inferred from the size of the stated "residual value" and in such case would be a factor tilting toward consideration of the agreement as a true lease. Factors affecting a determination of whether the lease is to be considered a disguised security agreement are assembled in the cases discussed in 76 ALR3d III, pp. 32 et seq. The predominant opinion appears to be that a true lease may or may not contain an option to purchase, its effect rather than its presence being the predominative element. In re A & T Kwik-N-Handi, Inc. (1973 FDC Ga.) 13 UCC Rep. 960, applying Georgia law, looked to see whether there was anything in the agreement by which the lessee could acquire title to the property. In the present case no option to purchase exists. It is inferable that the lessee could acquire title by paying the designated residual value rather than turning the vehicle back to the dealer's assignee, provided the latter consented, a contingency not dealt with in the lease. Nor is there in the evidence here any indication of economic or tax consequences of the agreement which might be heuristic in deciding its character as pointed out in "Lease or Security Interest: A Classic Problem of Commercial Law,"

Claxton, 28 Mercer Law Review, p. 599 et seq.

The instrument further stipulates as to default: "The Lessor may retain all rentals and payments and resale proceeds theretofore received and the other sums, if any, otherwise payable to the Lessee hereunder, and the Lessor shall be entitled to recover from Lessee any unpaid Monthly Rentals for the balance of the lease term for each Vehicle, and all other sums, if any, due or to come due, together with all costs and expenses, including reasonable attorney's fees, incurred by Lessor in the enforcement of its rights and remedies hereunder. The repossession and sale of any Vehicle by Lessor shall not affect Lessor's right to recover from Lessee all damages which Lessor may have suffered by reason of Lessee's breach of any provision of this lease, and Lessor may sell any such Vehicle with or without advertisement at public or private sale and without notice thereof to Lessee." Since this is a measure of damages ordinarily more applicable to defaulting debtors in security instruments than in lease agreements it becomes apposite to determine whether this is an indication that the instrument is in fact intended as security. While normally in a lease the measure of damages is the damage to the leasehold estate (one who repossesses the article may claim only the difference between the stipulated rent and the value of the leasehold), nevertheless it has been held that liquidated damages which are stipulated by the parties and are not so unreasonable as to constitute a penalty are enforceable. We feel bound by the decision in *Military Armament Corp. v. ITT Terryphone Corp.,* 134 Ga. App. 694 (215 SE2d 724) which holds that when authorized by the contract such acceleration of the entire rental price represents liquidated damages and does not constitute a penalty as provided in Code § 20-1403." *Hughes Motor Co. v. First Nat. Bank of Atlanta,* 136 Ga. App. 295 (3) (220 SE2d 782) (1975). This, at least, is the distinction made in *Jones v. Clark,* 147 Ga. App. 657 (2) (249 SE2d 619) (1978) and adhered to here. In *McGuire v. Associates Capital Service Corp.,* 133 Ga. App. 408 (3) (210 SE2d 862) (1974), as to a five-year lease with very similar provisions, it was held: "Nowhere therein can it be construed that the parties contemplated a sale, an option to purchase, or creation of a security interest." *McGuire* is the Georgia decision most closely fitting the facts of this case. *GEMC Federal Credit Union v. Shoemake,* 151 Ga. App. 705 (261 SE2d 443) (1979) does not involve a lease. *Redfern Meats v. Hertz Corp.,* 134 Ga. App. 381 (215 SE2d 10) (1975) involves a "Lease Service Agreement" for refrigerated service and was held "analogous to a sale" so far as implied warranties were concerned, an issue not here involved.

The parties succinctly stated in numerous parts of the document that it was intended as a lease. There is no option to repurchase. The

damages are those to which the parties agreed. At the least a question of fact remains for jury consideration as to whether the intention of the parties was the creation of a true lease or security for a sale of the vehicle.

The trial court erred in granting the defendant's motion for directed verdict.

*Judgment reversed. Banke and Carley, JJ., concur.*

DECIDED SEPTEMBER 22, 1981.

*Daniel F. Bridgers,* for appellant.
*William Jerry Westbrook,* for appellee.