### 70212. MEJIA v. CITIZENS & SOUTHERN BANK.
(332 SE2d 170)

CARLEY, Judge.

Appellant entered into a "motor vehicle lease" agreement with Cumberland V.W., Inc. as the lessor. The lessor then assigned the contract and the vehicle to appellee. Subsequently, appellant returned the vehicle and defaulted on the payments. Appellee sold the automobile at a private sale, and filed a complaint against appellant seeking those damages for the breach of the agreement as were speci-

fied therein, plus interest and attorney fees. Following discovery, both parties filed motions for summary judgment. The trial court granted summary judgment in favor of appellee and against appellant.

The sole issue for resolution on appeal is whether the provisions of the Uniform Commercial Code, in particular OCGA § 11-9-504 (3) which requires notice to a defaulting buyer of his right to demand a public sale of the vehicle, are applicable to this "motor vehicle lease" agreement. See OCGA § 10-1-36. "This . . . depends on whether the contract denominated a lease by the parties is a true lease or is a disguised secured transaction. If the lease is not a security transaction the notice provisions are inapplicable, and the [post-default] sale was properly conducted." *Ford Motor Credit Co. v. Dowdy,* 159 Ga. App. 666 (284 SE2d 679) (1981).

The terms of the lease agreement in the instant case required appellant to make 48 monthly payments of $234.38, and to provide the lessor with a refundable security deposit. The contract provided that upon the termination of the lease, the lessee was required to return the vehicle. Appellant had the option to purchase the vehicle at the scheduled expiration of the lease, however, by paying appellee the "residual value" of the vehicle. The residual value was defined in the agreement as the "estimated wholesale value of the vehicle at the end of the term of the lease," and was specified in the lease as $4,400. Appellant was required to maintain insurance on the vehicle, and to pay all taxes and license and inspection fees.

With regard to whether the instant agreement evinces a true lease or a disguised secured transaction, we are cited to OCGA § 11-1-201 (37). That statute provides, in pertinent part, that "[w]hether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon complaince with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." In addition, it is clear that the denomination of an agreement as a lease is not determinative. " 'In determining the real character of a contract, courts will always look to its purpose, rather than the name given it by the parties.' [Cit.]" *Redfern Meats v. Hertz Corp.,* 134 Ga. App. 381, 391 (215 SE2d 10) (1975).

The lease agreement in the instant case contains several provisions which are more common to security agreements than to true leases. For example, "default" is defined as not only the lessee's failure to pay any monthly payment or to maintain insurance, but also as an event occurring when the original lessor or its assignee "reasonably deems itself insecure or its prospects for payment under [the] lease

impaired." See *Citizens & Southern Equip. Leasing v. Atlanta Fed. Savings &c. Assn.*, 144 Ga. App. 800, 807 (243 SE2d 243) (1978). Additionally, the burden of repairs, taxes, and insurance is placed upon the lessee. *Mays v. C & S Nat. Bank*, 132 Ga. App. 602, 607 (3) (208 SE2d 614) (1974), overruled on other grounds, *Mock v. Canterbury Realty Co.*, 152 Ga. App. 872, 879 (264 SE2d 489) (1980).

However, regardless of other provisions indicative of a security agreement, it is commonly held that "the best test" for determining the intent of an agreement which provides for an option to buy, " 'is a comparison of the option price with the market value of the equipment at the time the option is to be exercised. Such a comparison shows whether the lessee is paying actual value or acquiring the property at a substantially lower price.' " *Ford Motor Credit Co. v. Dowdy*, supra at 667. As noted above, if, upon compliance with the terms of the "lease," the lessee has the option to become the owner of the property for no additional or for a nominal consideration, the lease is deemed to be intended for security. See OCGA § 11-1-201 (37). In the instant case, the option purchase price was the estimated wholesale value of the vehicle at the end of the term of the lease. Any determination of whether consideration is "nominal" must be made on a case by case basis, and is, at best, difficult. However, we find that in the present case, the terms of the lease required payment of more than a "nominal" price to exercise the option to purchase the vehicle, thus indicating that the agreement was a true lease. See *Rollins Communications v. Ga. Institute, Real Estate*, 140 Ga. App. 448, 450 (231 SE2d 397) (1976).

Another important factor present in the agreement and generally indicative of a true lease is the fact that the original lessor was apparently in the automobile rental business. Compare *Citizens & Southern Equip. Leasing v. Atlanta Fed. Savings &c. Assn.*, supra at 806. Also, the lessor did not require a financing statement, which is often held to signify a security transaction. See generally *Rollins Communications v. Ga. Institute, Real Estate*, supra at 450.

Based upon the foregoing, we find that the lease agreement entered into by the parties was intended to be a true lease and not to evince a secured transaction. Accordingly, the appellee was not required to comply with the provisions of OCGA §§ 11-9-504 (3) and 10-1-36, and the trial court did not err in granting summary judgment in favor of appellee and against appellant.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED JUNE 7, 1985.

*Alan Mullinax*, for appellant.

*Kathy L. Kushner*, for appellee.