69850. LITTON INDUSTRIES CREDIT CORPORATION
v. LUNCEFORD.
(333 SE2d 373)

McMURRAY, Presiding Judge.

This is a case in which Lewyn Machinery Company, Inc. (Lewyn) sold wood processing equipment to the defendant Robert Kenneth Lunceford, d/b/a Washington Wood Products. The plaintiff Litton Industries Credit Corporation financed the equipment by way of an "Equipment Lease Agreement" which was entered into with defendant on August 12, 1980. Shortly after delivery of the equipment, the defendant complained that the machinery was not functioning properly. Repairs were never made by Lewyn or the plaintiff and the defendant stopped making payments in June 1981.

On January 20, 1982, the plaintiff filed a complaint seeking possession of the equipment along with a claim for a deficiency judgment. In his answer, the defendant denied the plaintiff's allegations and counterclaimed seeking damages for failure of consideration and breach of implied warranties alleging the machine failed to perform as represented and that the machine was improperly installed. On February 1, 1982, the trial court entered a consent order allowing the plaintiff to repossess and sell the machinery. In April 1983 the plaintiff sold the equipment back to Lewyn for a fraction of the original sales price. The plaintiff then filed a motion for summary judgment seeking a deficiency under the "lease agreement" in the amount of $74,145.09. The trial court denied the plaintiff's motion and the case was tried before a jury on February 7, and February 8, 1984. At the close of the defendant's case the plaintiff moved for a directed verdict, which the trial court denied. A verdict was rendered by the jury in favor of the defendant on the plaintiff's claim for a deficiency judgment and in favor of the plaintiff on the defendant's counterclaim. The plaintiff moved for a judgment notwithstanding the verdict and upon its denial the plaintiff appealed. *Held*:

1. In its first enumeration of error the plaintiff argues that the trial court erred in not granting its motion for summary judgment. The court entered an order denying the plaintiff's motion for summary judgment on January 3, 1984, and a jury verdict with judgment of the court thereon was entered on February 8, 1984. "After a verdict and judgment have been entered, this court cannot review a judgment denying a motion for summary judgment because that issue became moot when the court heard evidence at trial." *Preferred Risk Mut. Ins. Co. v. Thomas*, 153 Ga. App. 154 (1) (264 SE2d 662). See *Capital*

*Assoc. v. Zabel*, 172 Ga. App. 19, 20 (2) (322 SE2d 67).

2. In its second and third enumerations of error the plaintiff contends that the trial court erred in denying its motion for directed verdict and motion for judgment notwithstanding the verdict as the plaintiff had proved as a matter of law that it was entitled to a deficiency judgment against the defendant in the amount of $74,145.09. In this regard, the plaintiff argues that the agreement between the parties was a lease, not a sale, thus precluding the application of the warranty provisions of Article 2 of the Uniform Commercial Code (UCC) and the resale of collateral provisions of Article 9 of the UCC to the facts of this case.

The controlling issues presented in the court's charge to the jury were: (1) whether there was an effective waiver of the implied warranty provision found in Article 2 of the UCC; and, (2) whether the sale of the equipment by the plaintiff upon the default of the defendant was done in a commercially reasonable manner. The plaintiff made no objections to the court's charge to the jury and, according to the record, the plaintiff did not request the court to give instructions to the jury dealing with the issue of whether the agreement between the parties was a transaction controlled by the UCC. (Both issues presented to the jury pointed to the conclusion that the transaction between the plaintiff and defendant was subject to the provisions of the UCC.)

Pretermitting the consequences of the plaintiff's failure to object to the court's charge to the jury and the plaintiff's failure to request the court to instruct the jury concerning the issue upon which it is now complaining, we will determine whether the "lease agreement" entered into between the parties was intended as a security agreement controlled by Article 9 of the UCC.

"UCC Article 9, Secured Transactions, applies to a 'lease . . . intended as security.' [OCGA § 11-9-102 (2)]." *Rollins Communications v. Ga. Institute of Real Estate*, 140 Ga. App. 448, 449 (2) (231 SE2d 397). "Whether a lease is intended as security is to be determined by the facts of each case." OCGA § 11-1-201 (37).

In *Hays v. Jordan & Co.*, 85 Ga. 741 (11 SE 833), the plaintiff Jordan & Company and defendant Hays entered into an agreement for the "rental" of an "Opera Piano." The defendant was to make "rental" payments to the plaintiff for a specific term in return for "use" of the piano. The plaintiff was to hold title to the property until the end of the lease term, after which time the defendant would retain possession of the piano and be given title to the property. In its holding the Supreme Court said: "Although the contract does use the term 'rent' and states that the notes are given for the 'use' of the piano, we do not so construe it, but regard it, not as a lease or renting, but as a conditional sale with title reserved in the vendor until the

purchase price is paid." *Hays v. Jordan & Co.*, 85 Ga. 741, 747 (2), supra. The court pointed out that the amount of "rental" paid was the same as the stipulated value of the piano and therefore concluded that "the sale of the piano, and not the renting thereof, [was] evidently the real end and basis of the contract." *Hays v. Jordan & Co.*, 85 Ga. 741, 748 (2), supra. In so ruling, the court quoted the United States Supreme Court, saying: " 'In determining the real character of a contract, courts will always look to its purpose, rather than to the name given it by the parties.' *Hervey v. R. I. Locomotive Works*, 93 U. S. 672." *Hays v. Jordan & Co.*, 85 Ga. 741, 748 (2), supra.

Since the Supreme Court's decision in *Hays v. Jordan & Co.*, supra, there has been a long line of cases which reflect factual criteria which distinguish a "true lease" from a lease which was intended as security. *Rollins Communications v. Ga. Institute of Real Estate*, 140 Ga. App. 448, supra; *Solomon Refrigeration v. Osburn*, 148 Ga. App. 772 (1) (252 SE2d 686); *Ford Motor Credit Co. v. Dowdy*, 159 Ga. App. 666 (284 SE2d 679); *Capital Assoc. v. Zabel*, 172 Ga. App. 19, supra. See also *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381 (215 SE2d 10); *American Warehouse &c. Svc. of Atlanta v. Floyd's Diesel Svc.*, 164 Ga. App. 106 (296 SE2d 64); and Annot., 4 ALR4th 85, 109 (1981), for criteria distinguishing a sale versus a lease when applying Article 2 of the UCC. In the case sub judice, the evidence presented at trial showed that (1) the plaintiff took a loan application from the defendant and issued a line of credit to him for $90,000; (2) the plaintiff admitted that it was not an equipment supplier but was a financing company which operated very much like a bank or other lending institution; (3) the plaintiff, at no time prior to the repossession of the equipment, had possession or title to the machinery; (4) the plaintiff was to retain no residual interest in the machinery after the termination of the lease; (5) the "rental" paid for the equipment over the lease term was not grossly disproportionate to the purchase price plus a finance charge had the equipment been financed under a conventional purchase money financing agreement. (John Dillard, an agent for the plaintiff, testified that the agreement with the defendant was based on an interest rate of 15.25%. The "cash sales price" of the equipment was $79,589 plus taxes and the total amount to be paid over the term of the lease, which was 72 months, was to be $117,132.76.) (6) Finally, all indicia of ownership remained in the defendant. (Maintenance costs, risk of loss, damage, taxes and insurance were the responsibility of the defendant.) See *Ford Motor Credit Co. v. Dowdy*, 159 Ga. App. 666, supra.

From these facts we find that the real character and purpose of the agreement between the plaintiff and the defendant was to create a lease which was intended as security, thereby requiring the plaintiff to comply with the provisions of Article 9 of the UCC. *Ford Motor*

*Credit Co. v. Dowdy*, 159 Ga. App. 666, supra. To hold otherwise would in essence allow lenders to dodge the requirements of Article 9 of the UCC by financing goods under the guise of a "lease agreement," depriving borrowers of the protection intended by the legislature when adopting the UCC.

3. Alternatively, the plaintiff argues that if the transaction was controlled by Article 9 of the UCC then it has met its burden of showing that it conducted a commercially reasonable sale of the repossessed machinery, thus entitling it to a judgment for the amount of the deficiency owed.

OCGA § 11-9-504 et seq. establishes a special procedure which governs the right of a secured party to dispose of collateral after default. This Code section states in pertinent part that: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." OCGA § 11-9-504 (3). Compliance with this section is a condition precedent to recovery of any deficiency between the sale price of the collateral and the amount of the unpaid balance. *Citizens State Bank v. Hewitt*, 158 Ga. App. 238, 241 (279 SE2d 531); *C & S Nat. Bank v. Dorsey*, 159 Ga. App. 784, 786 (1) (285 SE2d 242).

*Farmers Bank, Union Point v. Hubbard*, 247 Ga. 431 (276 SE2d 622), sets forth the burden which must be carried by a party seeking a deficiency judgment as relating the reasonableness of the price received. In *Hubbard*, supra, the Supreme Court held that "a creditor who fails to prove that notice of sale was given the debtor . . . or fails to prove that the disposition (sale), including its method, manner, time, place and terms, was commercially reasonable, is barred from obtaining a deficiency judgment, . . . except where the sole defect is the adequacy of the sale price, in which event the creditor is not barred from recovery but must overcome the presumption that the value of the collateral equals the debt on it. . . . This presumption is overcome by proving the fair and reasonable value of the collateral, whereupon the creditor is entitled to a deficiency judgment in the amount of the debt (plus or minus any payments or charges properly applicable to the disposition) less the fair and reasonable value of the collateral proved by the creditor (if the resale price is less than the fair and reasonable value proved)." *Farmers Bank, Union Point v. Hubbard*, 247 Ga. 431, 436-437, supra. See Comment, Adequacy of Sale Price: A Secured Party's Burden of Proof in Seeking a Deficiency Judgment after Resale of Collateral, 33 Mercer L. Rev. 397 (1981).

In the case sub judice, the equipment had a value of $79,589 when it was "leased" to the defendant, but was sold less than two

years later for only $17,500. " 'A wide discrepancy between the sale price and the value of collateral signals a need for close scrutiny, . . . even though a seemingly low return is usually not dispositive on the question of commercial reasonableness.' [Cit.]" *Granite Equip. Leasing Corp. v. Marine Dev. Corp.*, 139 Ga. App. 778, 779-780 (1) (230 SE2d 43). The evidence at trial not only showed that there was a wide discrepancy between the sale price and the value of the collateral, it also showed that Lewyn sold the property two weeks after it purchased it for $27,000.

Although we have closely examined the facts and circumstances surrounding the sale of the collateral in this case, it is not for this court to speculate as to the issue of the commercial reasonableness of the sale of collateral once the question has been submitted to and determined by the jury. *Slaughter v. Ford Motor Credit Co.*, 164 Ga. App. 428 (296 SE2d 428); *Ennis v. Atlas Fin. Co.*, 120 Ga. App. 849, 850 (172 SE2d 482).

4. In light of our ruling in Divisions 2 and 3 of this opinion and since the defendant has not cross-appealed as to the jury's adverse ruling upon his counterclaim, the issue of whether this transaction was subject to the implied warranty provisions of Article 2 of the UCC is moot.

5. We find, based on the reasons stated above, that the trial court did not err in denying plaintiff's motions for directed verdict and for judgment notwithstanding the verdict.

*Judgment affirmed. Banke, C. J., and Benham, J., concur.*

DECIDED JUNE 12, 1985 —
REHEARING DENIED JULY 12, 1985.

*Arthur L. Myers, Jr.*, for appellant.
*Walton Hardin*, for appellee.