76260. WOODS v. GENERAL ELECTRIC CREDIT AUTO LEASE, INC.
(369 SE2d 334)

BIRDSONG, Chief Judge.
Appellant, Annie Woods, appeals the order of the State Court of DeKalb County granting summary judgment to appellee-plaintiff and including therein an award of attorney fees in the amount of $942.78.

Appellant and her husband, Willie Ray Woods, co-signed a document, as lessees, entitled "New Vehicle Lease Agreement (Open-End)." Willie Ray Woods appears to have subsequently enjoyed the use and benefit of the automobile. The appellant and Willie Ray Woods divorced, and both signed a property settlement agreement wherein "[t]he Husband agrees to indemnify and hold harmless the Wife from any and all claims . . . against her arising as a result of his *lease*, use and operation of a 1983 Mercedes Sedan 240 automobile, such *lease* being with General Electric Auto Lease, of the State of Ohio." (Emphasis supplied.) Willie Ray Woods thereafter continued his complete control over and use of the vehicle. When he failed to make monthly payments according to the terms of the document, appellee terminated the lease, recovered and sold the vehicle, and ultimately brought suit against both Woods demanding $9,177.76, plus attorney fees and court costs. The trial judge granted appellee's motion for summary judgment against appellant and awarded appellee

$9,177.76 principal, $404.32 interest to date, court costs and $942.78 attorney fees. The trial judge also granted appellant/cross-claimant's motion for summary judgment against Willie Ray Woods. *Held*:

1. Appellant's first and second enumerations of error are that the trial court erred in granting appellee's motion for summary judgment and failing to find that a genuine issue of material fact existed regarding: (a) the matter of notice, and (b) the matter of commercial reasonableness of the sale of the automobile, respectively. Specifically, appellant assumes that appellee was a "secured party" and holder of a "security interest" in the automobile, and that therefore the notice and commercial reasonableness requirements of OCGA § 11-9-504 apply to this case.

The appellee asserts that OCGA § 11-9-504 is not applicable, as the vehicle was acquired by a transaction that constituted a mere lease and not by a transaction giving rise to a "security interest" within the meaning of OCGA § 11-9-102.

OCGA § 11-9-102 provides that the Uniform Commercial Code — Secured Transactions (Act. 9) applies "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property," and further states that "[t]his article applies to security interests created by . . . lease . . . intended as security." OCGA § 11-1-201 (37) pertinently defines the term "security interest" as "an interest in personal property . . . which secures payment or performance of an obligation. . . . Unless a lease . . . is intended as security, reservation of title thereunder is not a 'security interest'. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." Thus, the provisions of OCGA § 11-9-504 (3) are applicable only if the New Vehicle Lease Agreement is not a true lease but is in fact a disguised security transaction. *Mejia v. C & S Bank*, 175 Ga. App. 80, 81 (332 SE2d 170).

Examining the New Vehicle Lease Agreement on its four corners and applying the rules of construction found in *Mejia*, supra, and *Ford Motor Credit Co. v. Dowdy*, 159 Ga. App. 666 (284 SE2d 679), we find that the Agreement is in fact a true lease and not a disguised security transaction.

Although the document does contain certain provisions more likely to be found in a security transaction, for example, that the appellant and her husband would be responsible for all necessary vehicle repairs, vehicle maintenance, taxes and vehicle insurance, exami-

nation of the document reveals that these factors are not controlling. *Mejia,* supra at 82.

The Agreement specifically is labeled a lease and consistently refers to appellant and her husband as lessees. It includes the original lessor's assignment to the appellee of "all right, title and interest in and to the leased vehicle and to this lease. . . ." Moreover, it expressly provides "that this . . . is a true lease. . . ." While these factors are not dispositive in construing the nature of the Agreement, see generally *Mejia,* supra at 81 and *Ford Motor Credit Co.,* supra at 667, they are entitled to reasonable weight, as they are an indicator of the parties' contractual intent and the purpose of the Agreement.

Other factors indicative of a true lease, and which are present in this case include (a) that the original lessor was apparently in the automobile leasing business, *Mejia,* supra at 82; (b) that the lessor did not require a financing statement, *Mejia,* supra at 82; and (c) that the Agreement expressly provided that the lessees "have absolutely no equity or other ownership rights in the vehicle," unless they exercise their option to purchase the vehicle, see generally *Ford Motor Credit Co.,* supra at 667, and cases cited therein. Additionally, the leasing of automobiles by individuals, as well as by business entities, is not an uncommon practice today.

We note that this Agreement provided for a refundable security deposit of $450, and required 60 monthly lease payments of $416. While the existence of both an "initial down payment" and "an additional payment of [a] security deposit" would be a factor also tending to establish that this transaction was a conditional sale, *Ford Motor Credit Co.,* supra at 667, the mere existence of a reasonable security deposit would be consistent with many lease transactions. This Agreement on its face required no "initial down payment," and the security deposit, which was refundable, was roughly equivalent to the amount required for a monthly leasing payment. Such an amount is not unreasonable and entirely consistent with a lease transaction.

Although the Agreement in this case does provide appellant and her husband with an option to buy, the inclusion of such a provision does not per se make the Agreement a lease intended for security or give rise to a conditional sales agreement. See OCGA § 11-1-201 (37); *Mejia,* supra at 81; *Ford Motor Credit Co.,* supra at 666. When an alleged lease agreement contains an option to purchase the leased vehicle, the "best test" for determining the agreement's purpose and the parties' contractual intent " ' " "is a comparison of the option price with the market value of the equipment at the time the option is to be exercised." ' " *Mejia,* supra at 82; *Ford Motor Credit Co.,* supra at 667. This comparison will reveal whether the lessees are acquiring the property at or near its actual value or for a substantially reduced or nominal price. See *Mejia,* supra at 82; *Ford Motor Credit Co.,* supra

at 667. If the lessees can acquire the property under the purchase option for little or no additional consideration in relation to its true value, the lease would be one intended for security. OCGA § 11-1-201 (37).

The Agreement in this case provides the following purchase option formula: "[t]he purchase price *shall be greater of*, (1) the Balance Subject to Lease Charge [$24,427.78 — the stated initial value of the vehicle], less all depreciation amounts applied before termination [the average monthly depreciation is set at $195.96 for a scheduled lease term depreciation of $11,757.78 at the end of the 60-month lease period], or (2) 90% of the vehicle's then Automotive Market Report 'clean value' (with accessories)." (Emphasis supplied.) This formula on its face shows that the lessees would not be paying "no consideration," "nominal consideration" or even a purchase price "substantially lower" than the vehicle's actual value. In fact, it appears from this formula that the lessees would have been required to pay at least a reasonable price if not a price equal to or greater than the actual value of the automobile at option time in order to exercise their purchase option.

Based on the foregoing, we find that the Agreement was intended to be and was in fact a true lease and not a disguised security transaction. Accordingly, we find appellant's first and second enumerated errors to be without merit, as contrary to appellant's assertions, no genuine issue of material facts exists for adjudication. See *Hyman v. Horwitz*, 148 Ga. App. 647, 649 (252 SE2d 74).

2. Appellant's third enumerated error is that the trial court erred in awarding appellee attorney fees in any amount without conducting a hearing or by receiving evidence of fees from appellee ex parte. Appellee duly notified appellant of its intent to collect attorney fees and in its complaint demanded "judgment against [appellant and her husband], jointly and severally, in the principal sum of $9,177.76, plus attorney's fees. . . ." See generally *General Elec. &c. Corp. v. Brooks*, 242 Ga. 109 (249 SE2d 596). The court entered judgment for appellee in the amount claimed, plus $404.32 interest, $942.78 attorney fees and court costs. The New Vehicle Lease Agreement, which appellant co-signed as a lessee, contained a default provision which pertinently provided: "I also agree to be liable for all collection and legal costs, including reasonable attorney's fees . . . to the extent permitted by law."

OCGA § 13-1-11 (a) (2) provides a statutory methodology for calculating attorney fees when the "evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent. . . ." Appellant has not contested the applicability of this statute under the facts of this case; and we have held that "[w]here a contract provides for reasonable attorney's fees the

amount of such fees is calculated under the provisions of the Act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., pp. 545, 546; Code Ann. § 20-506)" (emphasis deleted); *Carter v. Whatley*, 97 Ga. App. 10, 13 (101 SE2d 899), questioned on other grounds, *White v. Turbidy*, 227 Ga. 825 (5) (183 SE2d 363). As OCGA § 13-1-11 (a) (2) is identical in all substantial respects to the language of Code Ann. § 20-506, we find that the attorney fees awarded in the present case were subject to calculation based on the provisions of OCGA § 13-1-11 (a) (2). The trial court's award of $942.78 in attorney fees represents substantial compliance, within the meaning of OCGA § 1-3-1 (c), with this statutory formula. As the amount of attorney fees awarded complied with the provisions of OCGA § 13-1-11 (a) (2), the only other issues to be resolved are whether attorney fees can be awarded when plaintiff receives a grant of his motion for summary judgment, and whether a hearing is required in the case at bar as a prerequisite to such grant. We answer the first question in the affirmative and the second in the negative.

A plaintiff who is entitled to a summary judgment on a document establishing "evidence of indebtedness," within the meaning of OCGA § 13-1-11 (a) "is also entitled to a judgment for attorney fees thereon." See *Mercantile Nat. Bank v. Berger*, 129 Ga. App. 707 (5) (200 SE2d 921).

As the amount of attorney fees to be awarded in cases such as this is subject to computation by using either without variance, or by substantially complying with, the unambiguous statutory formula of OCGA § 13-1-11 (a) (2), a hearing is not required merely to effect this computation.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED MAY 3, 1988.

*Gail T. Joyner*, for appellant.
*Christine C. Daniel*, for appellee.