**TRI–CONTINENTAL LEASING CORPORATION, Plaintiff,**

v.

**CHARLES BEALL & COMPANY, INC. and Charles P. Beall, Defendant.**

No. 1–88–CV–655–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

March 3, 1989.

Gary Devon Stokes, Lamberth Bonapfel Cifelli & Willson, P.A., Atlanta, Ga., for plaintiff.

Wayne F. Carmichael, Roswell, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This action arises out of a lease agreement between the plaintiff ("Tri–Continental"), the lessor, and the defendant ("Beall & Company"), the lessee, for the lease of a "trenching machine" to be used in Defendant's business. After a handful of payments were made under the terms of the lease, Defendant defaulted and the machine was repossessed. Plaintiff brought this action based on diversity of citizenship, 28 U.S.C. § 1332, to recover the losses it suffered as a result of Defendant's breach of the lease agreement. The case is now before the court on Plaintiff's motion for summary judgment.

FACTS

Beall & Company, the corporate defendant, is a utility pipeline contracting firm which is no longer conducting business. Tri–Continental is a leasing corporation engaged in the business of leasing heavy equipment. At least a year prior to the lease involved in this case, Beall & Company purchased the trenching machine which is the subject of this litigation from Vermeer Southeast Sales and Service for approximately $40,000. After Beall & Company purchased the machine, it ran into some financial difficulty and sought to reduce its monthly cost for the trencher. Vermeer put the defendant in touch with Lillian Coover of AAFS who discussed with

the defendant corporation the possibility of leasing the equipment through Tri–Continental. In February 1987, the defendant sold the machine to Tri–Continental, paid off the balance owed to Vermeer and entered into an agreement with Tri–Continental for the lease of the trenching machine.

Defendant, Charles P. Beall executed the lease on behalf of the corporate defendant on or about February 12, 1987. At the same time, Beall also signed a personal guaranty, individually guarantying the corporation's obligation under the lease agreement. Although Beall admits signing page two of the guaranty, he denies ever seeing page one or having any knowledge that he was signing a personal guaranty.

The facts surrounding Beall's execution of the lease related documents are in some dispute.[1] Apparently, Tony Palmer, Vice President of Beall & Company, met with Lillian Coover of AAFS in her office in early 1987 and reviewed the types of documents which needed to be executed in order to accomplish the leasing arrangement between Plaintiff and Beall & Company. Palmer was told specifically by Coover that no individual was taking personal responsibility for the lease. Palmer Depo. at 27. Coover did not at that time discuss the subject of Beall's personal indemnity or present to Palmer any document that would bind Beall personally. *Id.* at 28.

Coover did tell Palmer that Beall would need to provide a personal financial statement, but Palmer testified that Coover never suggested that Tri–Continental wanted or needed Beall's personal guaranty.

On or about February 12, 1987, Ms. Coover brought the lease documents ready to be executed over to Beall & Company's offices. She met initially with Tony Palmer who reviewed the prepared documents in Coover's presence. Palmer has testified that he never saw the individual guaranty which is now Exhibit B to Charles Beall's deposition, nor was he made aware that a guaranty was necessary. *Id.* at 38. After reviewing the documents, Mr. Palmer contacted Mr. Beall, who was in a meeting,

and informed him that the documents were in order and were ready to be signed. Palmer then escorted Ms. Coover to a waiting area outside Beall's office. Beall stepped out of his meeting and signed the lease documents as Ms. Coover peeled back the pages and indicated where he needed to add his signature. Beall Depo. at 46. Apparently, at least the second page of the personal guaranty was included in the documents Ms. Coover presented for Mr. Beall's signature. Beall claims never to have seen page one of the guaranty and not to have read carefully page two. Beall testified in his deposition that he had no intention of obligating himself personally on the lease. He did submit a personal financial statement to Tri–Continental in connection with his application for the lease agreement, but he asserts he had no knowledge that he was to be held personally liable for the company's debt.

Per the lease, Beall & Company agreed to make monthly payments of $795.00 for 48 consecutive months. Defendant made 8 payments for a total of $6,360 before it defaulted. The last payment was made on or about October 28, 1987. As a result of Defendant's failure to make payments when due under the terms of the lease, Plaintiff sent a notice of acceleration on December 18, 1987 to Beall & Company as lessee and to Charles P. Beall as guarantor. Plaintiff claims that the accelerated balance due under the terms of the lease is $31,800 plus use tax of $1,272 and late charges of $271.96. Tri–Continental subsequently repossessed the trenching machine and sold it for $5,000.

## DISCUSSION

There is no dispute that Beall & Company entered into an agreement with Tri–Continental. There is also no dispute that Beall & Company defaulted on that agreement by failing to make the agreed to lease payments. Plaintiff has moved for summary judgment arguing that there are no disputed material facts. Fed.R.Civ.P. 56(c). Plaintiff asserts that the lease contract speaks for itself and provides for damages

---

1. At the summary judgment stage all reasonable doubt about the facts are to be resolved in favor

of the non-movant. *Clemons v. Dougherty Co., Georgia,* 684 F.2d 1365, 1369 (11th Cir.1982).

upon default. Plaintiff also offers Charles Beall's individual guaranty, and argues that Beall is personally liable for the corporation's obligations under the lease. Defendant now asserts that the agreement between Beall & Company and Tri–Continental was not a lease but was actually a conditional sale with Tri–Continental retaining a security interest in the equipment. Defendant argues that the lease was actually a disguised security agreement, and therefore, the plaintiff is bound by Article 9 of the U.C.C. in their subsequent sale of the equipment. Defendant Beall argues that he was induced by fraud to sign the individual guaranty and is not bound by it. And finally, Beall & Company argues that the liquidated damages provision of the lease contract is actually a penalty which cannot be enforced under Georgia contract law.

*Lease or Sale*

■ The lease agreement expressly reserves title to the leased property in Tri–Continental, and provides that Beall & Company has no right, title or interest in the equipment except the right of use. Exhibit A to Complaint. The essential distinction between a lease and a conditional sale is that in a lease the lessee never owns the property. *In re Atlanta Times Inc.*, 259 F.Supp. 820 (N.D.Ga.1966) (Morgan, J.).

The intent of the parties in reaching an agreement is a factor which must be determined in order to classify the agreement itself. *Ford Motor Credit Company v. Dowdy*, 159 Ga.App. 666, 284 S.E.2d 679 (1981). The court will look to the purpose of a document rather than the label the parties place on it to determine the true character of an agreement. *Taylor v. Commercial Credit Equipment Corp.*, 170 Ga.App. 322, 316 S.E.2d 788 (1984). However, in cases such as this when the written document is unambiguous and provides that the written contract contains the entire agreement, the intention of the parties will be determined from the language of the lease itself. *In re Atlanta Times*, 259 F.Supp. at 826.

The document in all respects purports to be a lease. There is no provision under which Beall & Company may ever acquire title to the leased property and no method by which it would possess any right other than the use of the property. A lease which is intended as a security has the ultimate intent of a sale. *In re Atlanta Times*, supra. The lease in this case does not provide for the transfer of ownership interest and specifically retains ownership in the plaintiff. The agreement does not even provide the lessee with an option to purchase.

Defendant's erroneously rely on *Ford v. Dowdy*, 159 Ga.App. 666, 284 S.E.2d 679. In that case, the trial court granted the defendant's motion for a directed verdict. On facts very similar to the ones at bar, the trial court found that the lease was actually a security agreement subject to the requirements of Article 9 of the U.C.C.. The Georgia court of appeals reversed and held that "[a]t the *least* " [emphasis added] a jury question was presented as to whether there was a true lease.

The contract between the parties is unambiguous and in all manners evinces the intent to create an arrangement for the lease of certain heavy equipment. The court finds that a true lease existed between the plaintiff and the defendant, and therefore, the provisions of Article 9 of the U.C.C. do not apply to the subsequent sale of the trencher.

The defendant has failed to come forward with any evidence that would preclude a finding of liability under the terms of the equipment lease. Therefore, summary judgment on the issue of liability against Beall & Company for default is GRANTED.

*Guaranty*

Defendant in this case admits that he signed the document binding him personally for the obligations of the corporation but alleges that he did not read the guaranty or have any knowledge that he was signing such a document. Under Georgia law, one who signs a written document without reading it, where there is no relationship of confidence or trust between the parties, is chargeable with knowledge of its contents, unless he or she is prevented from reading

the document by some fraud or artifice. *Conklin v. Liberty Mutual Ins. Co.*, 240 Ga. 58, 239 S.E.2d 381 (1977).

On a motion for summary judgment all reasonable doubt about the facts are to be resolved in favor of the non-movant. *Clemons v. Dougherty Co., Georgia*, 684 F.2d 1365, 1369 (11th Cir.1982). Defendant is apparently asserting two excuses for his failure to read the individual guaranty, first that he had a relationship of confidence and trust with Tony Palmer, and second that Ms. Coover committed some sort of fraud in obtaining his signature.

■ Defendant's reliance on his own associate does not excuse his failure to read the document presented to him by the plaintiff which bound him to the plaintiff. A person signing a document without reading it may avoid the contract if he placed confidence in the opposing party which would have excused his failure to read. *Cole v. Cates,* 113 Ga.App. 540, 149 S.E.2d 165 (1966). Defendant's confidence in his own associate has no bearing upon a suit between the plaintiff and the defendant unless the defendant claims that plaintiff's agent committed a fraud upon his trusted associate and thus perpetrated a fraud upon him.

■ Defendant's second argument is that Ms. Coover fraudulently slipped the guaranty in with the other documents for Beall's signature after Palmer had gone over the paperwork with her. Fraud is an affirmative defense which must be plead with particularity. Fed.R.Civ.P. 8(c). Defendant may not raise fraud in the inducement as a defense to his signing of the guaranty at this stage of the litigation when it was not plead in his Answer to the Complaint.

This court finds the defendant Charles P. Beall liable for the obligations of the corporation under the terms of the lease pursuant to the individual guaranty dated February 12, 1987. Plaintiff's motion for summary judgment against Charles P. Beall individually is GRANTED.

*Liquidated Damages or Penalty*

■ Under the default and remedies section of the lease agreement, the lessor is given the right upon default to sue for and recover all rents and other monies due and to become due under the terms of the lease. Exhibit A to Complaint. Plaintiff asks that the court award $31,800 as the remaining payments due under the lease agreement. Whether a provision represents liquidated damages or a penalty does not depend upon the label the parties place upon it, but rather depends upon the effect the payment was intended to have and whether it was reasonable. *Taylor v. Commercial Credit Equipment Corporation*, 170 Ga.App. 322, 316 S.E.2d 788 (1984).

Georgia courts have analyzed acceleration provisions in lease agreements such as this one as being either liquidated damages or unenforceable penalties depending on the individual facts and circumstances of the case. Generally, the courts have applied a three part inquiry: 1) is the injury caused by the breach difficult of or impossible of accurate estimation; 2) did the parties intend to provide for damages rather than a penalty; and 3) is the sum stipulated a reasonable pre-breach estimate of the probable loss. *Taylor*, 170 Ga.App. at 322, 316 S.E.2d 788. In cases of doubt, the courts favor the construction which holds the stipulated sum to be a penalty and limits the recovery to the amount of damages actually shown, rather than a liquidation of the damages. *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 227 S.E.2d 340 (1976).

The lease provision in this case would authorize the plaintiff to accelerate $3\frac{1}{3}$ years of payments totaling $31,800 or over 80% of the total rentals due under the terms of the lease. The plaintiff is also authorized to repossess the equipment under the terms of the lease provision. In *Taylor*, the Georgia court of appeals addressed a case of an equipment lease with an acceleration provision very similar to the one before this court. *Taylor* discussed Georgia precedent which upheld acceleration provisions as valid liquidated damages:

In short, enforcement of the liquidated damages provisions in the leases in *Hughes Motor Co. v. First Nat. Bank of Atlanta*, 136 Ga.App. 295, 220 S.E.2d 782 (1975) and *Dowdy* was acceptable because substantial portions of the lease terms had passed and the range of damages was 25 to 50 percent of the total amounts due. Those cases differ significantly from the instant case where the default occurred in the second year of a 10–year term and liquidated damages of almost 60% of the original total lease payments were sought.

170 Ga.App. at 323, 316 S.E.2d 788. *Taylor* held that the acceleration provision in that case constituted an unenforceable penalty. Though the injury that will be caused by a breach is almost always difficult to estimate, this court finds that the damage provision in the instant case bears no reasonable relation to probable damages which would be suffered from a breach of the lease agreement. The court finds that the acceleration provision of the contract represents a penalty and is unenforceable under Georgia contract law.

Plaintiff is entitled, however, to actual damages for breach of the lease agreement including out of pocket expenses and lost profits. There are disputed issues of fact as to the amount of damages plaintiff has suffered, and the actual value of the equipment when repossessed. The issue of damages is reserved for determination by a jury.

CONCLUSION

Plaintiff's motion for summary judgment is GRANTED as to the liability of both defendants—Beall & Company and Charles P. Beall—for breach of the lease agreement of February 12, 1987.

Plaintiff's motion for summary judgment is DENIED as to the issue of damages which presents questions of fact which must be determined at trial.

So ORDERED.