In the Matter of Johnnie Bell
JARRELLS, Debtor.

MR. C'S RENT TO OWN, Movant,

v.

Johnnie Bell JARRELLS, Respondent.

Bankruptcy No. 96–30755.

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Feb. 6, 1997.

Richard W. Schmidt, Greensboro, GA, for Movant.

Anne M. Bernstein, Athens, GA, for Respondent.

Camille Hope, Macon, GA, Chapter 13 Trustee.

## *MEMORANDUM OPINION*

ROBERT F. HERSHNER, Jr., Chief Judge.

Mr. C's Rent to Own, Movant, filed on September 17, 1996, its Objection to Confirmation of Plan. The Court held a hearing on Movant's objection on December 4, 1996. The Court, having considered the evidence presented and the arguments of counsel,[1] now publishes this memorandum opinion.

Movant is a rent to own business owned by Dave Conger. Movant rents and sells new and used furniture and appliances.

Johnnie Bell Jarrells, Debtor, Respondent, signed a Rental Purchase Agreement with Movant for a used living room suite. The agreement provides, in part:

RENTAL PURCHASE AGREEMENT

Date: 12/28/95....

RENTAL PURCHASE DISCLOSURES

1. RENTAL TERM: MONTHLY....
Rental payments are due at the beginning of each term that you choose to rent the property. There are no refunds if you choose to return the property before the end of the term.

2. DESCRIPTION OF PROPERTY AND RENTAL RATES:

| Categ./Descp | Mo.Rent |
|---|---|
| Ashley | 59.00 |
| LR Suite | |

3. INITIAL RENTAL PAYMENT.
Your initial rental payment will include the following charges:

| Rent | Delivery Charge | Total |
|---|---|---|
| 59.00 | 5.00 | 59.00 |

. . . .

5. COST OF LEASE.
If you choose to rent to own you must renew this lease for the following number of months or weeks:
15 Months @ 59/mo. for a total cost of 885.00

6. OUR ESTIMATED FAIR MARKET VALUE FOR THIS PROPERTY IS 395.00

7. COST OF LEASE SERVICES.
If you renew this lease for the number of terms necessary to acquire ownership the cost of lease services will be 490

8. EARLY PURCHASE OPTION.
If you wish to purchase the rental property you may do so at any time by the payment of 55% of the remaining Cost of Lease calculated at that time.

. . . .

TYPE OF TRANSACTION: THIS IS A RENTAL TRANSACTION. You may use the property for the term of this lease. At your option, you may renew this lease. To do this, you must make a rental payment in advance for each term you wish to rent the property. The rental rates are shown above. Time is of the essence in this lease. There are no grace periods.

TERMINATION: You may voluntarily terminate this lease at the end of any term with no penalty. To do so, you must return the property and pay all rental payments and other charges due through the date of return.

. . . .

TITLE, MAINTENANCE AND TAXES: We retain title to the property at all times and will pay any taxes which might be levied on the property. You do not own the property unless you buy it or

---

1. Athens Consumer Law Center, Inc. filed an *amicus curiae* brief.

acquire ownership as provided by the terms of this lease. We will maintain the property in good working order as long as you rent it.

. . . .

INTENT: You agree that by signing this lease your intent is to rent rather than purchase the property.

. . . .

BY SIGNING THIS LEASE, YOU ADMIT THAT YOU HAVE READ IT, THAT YOU UNDERSTAND IT AND THAT YOU HAVE RECEIVED A SIGNED COPY OF IT. YOU ALSO ADMIT THAT YOU RECEIVED THE PROPERTY IN SATISFACTORY CONDITION.

WITNESS:/s/ Conger   RENTER:   Lilla Lipton
LESSOR:   Mr Cs   CO-RENTER:Johnnie B. Jarrells

Respondent later signed on June 21, 1996, a Rental Purchase Agreement for an air conditioner. This agreement is on the same form as the prior Rental Purchase Agreement for the living room furniture. The agreement for the air conditioner provides that the rental term is weekly. The rent is $28 per week. The estimated fair market value of the air conditioner is $595. Respondent must renew the agreement for fifty-two weeks if she wants to own the air conditioner.

The Rental Purchase Agreements provide that the rental terms are week to week for the air conditioner and month to month for the furniture. Respondent can return the property at the end of any term without any further obligation. Respondent is not required to renew the agreements or to purchase the property. Movant is responsible for maintaining and paying any taxes assessed on the property.

Respondent essentially was current on her payments to Movant when Respondent filed a petition under Chapter 13 of the Bankruptcy Code on July 2, 1996. Respondent's Chapter 13 plan proposes to pay in full the remaining lease payments, plus interest, to Movant over the three-and-one-half-year term of the Chapter 13 plan. Respondent's Chapter 13 plan treats Movant as having fully secured claims. Respondent argues that the Rental Purchase Agreements are

secured sales agreements which can be modified through her Chapter 13 plan.

Respondent has worked for the same employer for twenty-five years. Respondent cannot afford the weekly and monthly payments called for in the Rental Purchase Agreements. Respondent, however, can pay the balance owed to Movant over the term of her Chapter 13 plan.

Movant argues that the Rental Purchase Agreements are true leases. Movant argues that Respondent must faithfully perform the terms of the agreements if she wants to retain the furniture and air conditioner.

■ The issue presented is whether the Rental Purchase Agreements are true leases or secured sales agreements. "The legislative history to section 365 of the Bankruptcy Code states that whether a lease constitutes a security agreement should be determined by state law. A security interest in personal property is subject to Georgia's version of the uniform Commercial Code." *National Traveler, Inc. v. Paccom Leasing Corp. (In re National Traveler, Inc.),* 110 B.R. 619, 620 (Bankr.M.D.Ga.1990).

In *In re Paz,*[2] Judge Walker, speaking for the Bankruptcy Court for the Southern District of Georgia, stated:

The Georgia Legislature amended O.C.G.A. § 11-1-201(37) in 1993 to provide a codified distinction between documents creating security interests and lease agreements. The agreement before the Court, having been entered into after the effective date of the amendments, is subject to scrutiny under the amended law.

179 B.R. at 746.

The court also stated:

The 1993 amendment to section 11-1-201(37) is largely consistent with Georgia case law prior to the amendment. The amendment provides a yardstick for the Court to measure the facts of each individual case.

179 B.R. at 747.

Section 11-1-201(37) of the Georgia Code[3] provides:

---

**2.**   179 B.R. 743 (Bankr.S.D.Ga.1995).

**3.**   O.C.G.A. § 11-1-201(37) (Supp.1996).

(37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Code Section 11–2–401) is limited in effect to a reservation of a "security interest." The term also includes any interest of a buyer of accounts or chattel paper which is subject to Article 9 of this title. The special property interest of a buyer of goods on identification of those goods to a contract for sale under Code Section 11–2–401 is not a "security interest," but a buyer may also acquire a "security interest" by complying with Article 9 of this title. Unless a consignment is intended as security, reservation of title thereunder is not a "security interest," but a consignment in any event is subject to the provisions on consignment sales (Code Section 11–2–326).

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) The original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that

(a) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) The lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c) The lessee has an option to renew the lease or to become the owner of the goods,

(d) The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection (37):

(x) Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;

(y) "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and

(z) "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is deter-

mined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

O.C.G.A. § 11–1–201(37) (Supp.1996).

In *National Traveler, Inc. v. Paccom Leasing Corp. (In re National Traveler, Inc.),*[4] this Court stated:

Georgia law does not require "magic words" to create a valid security interest. Rather, the court must refer to the general law of contracts and determine whether the parties intended to create a security agreement. *United States v. Hollie (In re Hollie),* 42 B.R. 111, 117 (Bankr.M.D.Ga. 1984).

The determining factor is the intention of the parties at the time the agreement was entered into as construed in light of facts and circumstances as they existed at that time. *Citizens & Southern Equipment Leasing, Inc. v. Atlanta Federal Savings & Loan Assoc.,* 144 Ga.App. 800, 805, 243 S.E.2d 243, 247 (1978). A document is construed according to the intent of the parties as ascertained from factors that distinguish true leases from security agreements. *Leasing Service Corp. v. River City Construction, Inc.,* 743 F.2d 871, 878 (11th Cir.1984).

The best test for determining the intent of an agreement which provides for an option to buy is a comparison of the option price with the market value of the equipment at the time the option is to be exercised. Such a comparison shows whether the lessee is paying actual value or acquiring the property at a substantially lower price. *Mejia v. Citizens & Southern Bank,* 175 Ga.App. [80] at 82, 332 S.E.2d [170] at 172 [ (1985) ]; *Ford Motor Credit Co. v. Dowdy,* 159 Ga.App. at 667, 284 S.E.2d at 680.

If the lessee has the option to become the owner of the property for no additional or for a nominal consideration, the lease is deemed to be intended for security. Any determination of whether consideration is nominal must be made on a case-by-case basis. *Mejia v. Citizens & Southern Bank,* 175 Ga.App. at 82, 332 S.E.2d at 172.

110 B.R. at 621.

Georgia courts also have considered other factors in determining the intent of the parties. In *Ford Motor Credit Co. v. Dowdy,*[5] the Georgia Court of Appeals stated:

Whether [an agreement] is intended as security is to be determined by the facts of each case; the name which the parties give it is not conclusive.... Other factors present in this case which are listed in *Davis Brothers* as quoted from *In re Transcontinental Industries, Inc.,* 3 UCC Rep. 235 [1965 WL 8366] (N.D.Georgia 1965) as tending to establish that the transaction is a conditional sale are: the lessor's purchase of the equipment from a supplier; the requirement that the lessee be responsible for the payment of all taxes, insurance and expenses for repairs, an initial down payment, and an additional payment of security deposit.

... The predominate opinion appears to be that a true lease may or may not contain an option to purchase, its effect rather than its presence being the predominative [sic] element.

284 S.E.2d at 680–81.

In *Woods v. General Electric Credit Auto Lease, Inc.,*[6] the Georgia Court of Appeals stated:

Although the [car lease agreement] does contain certain provisions more likely to be found in a security transaction, for example, that the appellant and her husband would be responsible for all necessary vehicle repairs, vehicle maintenance, taxes and vehicle insurance, examination of the

---

**4.** 110 B.R. 619 (Bankr.M.D.Ga.1990).

**5.** 159 Ga.App. 666, 284 S.E.2d 679 (1981), *overruled on other grounds, Adams v. D & D Leasing*

*Co. of Georgia, Inc.,* 191 Ga.App. 121, 381 S.E.2d 94 (1989), *cert. denied.*

**6.** 187 Ga.App. 57, 369 S.E.2d 334 (1988).

document reveals that these factors are not controlling. *Mejia*, supra 175 Ga.App. at 82, 332 S.E.2d 170.

The Agreement specifically is labeled a lease and consistently refers to appellant and her husband as lessees. It includes the original lessor's assignment to the appellee of "all right, title and interest in and to the leased vehicle and to this lease. . . ." Moreover, it expressly provides "that this . . . is a true lease. . . ." While these factors are not dispositive in construing the nature of the Agreement, see generally, *Mejia*, supra at 81, 332 S.E.2d 170 and *Ford Motor Credit Co.*, supra 159 Ga.App. at 667, 284 S.E.2d 679, they are entitled to reasonable weight, as they are an indicator of the parties' contractual intent and the purpose of the Agreement.

Other factors indicative of a true lease, and which are present in this case include (a) that the original lessor was apparently in the automobile leasing business, *Mejia*, supra 175 Ga.App. at 82, 332 S.E.2d 170; (b) that the lessor did not require a financing statement, *Mejia*, supra at 82, 332 S.E.2d 170; and (c) that the Agreement expressly provided that the lessees "have absolutely no equity or other ownership rights in the vehicle," unless they exercise their option to purchase the vehicle, see generally *Ford Motor Credit Co.*, supra 159 Ga.App. at 667, 284 S.E.2d 679, and cases cited therein. Additionally, the leasing of automobiles by individuals, as well as by business entities, is not an uncommon practice today.

. . . This Agreement on its face required no "initial down payment," and the security deposit, which was refundable, was roughly equivalent to the amount required for a monthly leasing payment. Such an amount is not unreasonable and entirely consistent with a lease transaction.

369 S.E.2d at 335–36.

Turning to the case at bar, the Court notes that the Rental Purchase Agreements contain provisions that are found both in a true lease and in a sales agreement. Respondent is not required to make any additional payments when the agreements terminate to own the property. Movant's trade name im-

plies that customers who rent will someday own the property. The agreements are entitled "Rental Purchase Agreement." These factors support Respondent's contention that the agreements are secured sales agreements.

The agreements, however, also contain provisions found in a true lease. Respondent can return the property at the end of any weekly or monthly term without any further obligation. Respondent is not required to renew the agreements or to purchase the property. Respondent was not required to make a down payment or security deposit. Movant is responsible for maintaining the property and paying any taxes assessed on the property. The agreements expressly provide that, by signing the agreements, Respondent intends to rent rather than purchase the property. The agreements expressly provide that Respondent will not own the property unless she buys it or acquires ownership as provided by the terms of the agreements.

The Court, having considered the facts presented and the applicable Georgia law, is persuaded that the Rental Purchase Agreements are true leases.

An order in accordance with this memorandum opinion will be entered this date.

### *ORDER*

In accordance with the memorandum opinion entered this date; it is

ORDERED that the Objection to Confirmation of Plan filed on the 17th day of September, 1996, by Mr. C's Rent to Own, Movant, hereby is sustained; and it is further

ORDERED that the Rental Purchase Agreements entered into on the 28th day of December, 1995, and the 21st day of June, 1996, by Movant and Johnnie Bell Jarrells, Respondent, hereby are determined to be true leases.