## 66937. GATEWAY LEASING CORPORATION v. HEATH.

BANKE, Judge.
The plaintiff filed suit to recover damages for the defendant's alleged breach of a motor vehicle lease agreement, and the defendant counterclaimed for damages for breach of contract and fraud. Following a jury trial, the court directed a verdict for the defendant on the complaint, and the jury awarded him $4,500 in actual damages and $27,000 in punitive damages on his counterclaim. However, in entering judgment on the verdict, the trial court reduced the award of

actual damages to $4,043.28. This was done at the request of the defendant for the purpose of conforming the judgment to the evidence presented at trial. The plaintiff filed this appeal.

The defendant was a dealer-salesman for a tool company known as "Snap-on Tools." According to a sales brochure furnished to him by the plaintiff, the vehicle in question was custom-designed for use as a Snap-on-Tools display van and was "properly equipped and specially designed to provide maximum capacity and operating efficiency" in this regard.

The defendant testified that prior to the execution of the lease agreement, the plaintiff's salesman told him that if something "should go wrong" with the vehicle, the plaintiff would fix it. The lease contract contained a series of boxes above the signature line which were designed to indicate which party was to be responsible for such matters as insurance, maintenance, tires, and registration fees. On the copy of the contract introduced into evidence by the plaintiff, all of these boxes were checked so as to designate the lessee as the party responsible for these items. However, on the copy given to the defendant after the contract was executed, all the boxes were blank.

The lease was for a period of 48 months. The defendant testified that the day after he took possession of the van, a generator which operated the vehicle's two air-conditioning units ceased to function. After several unsuccessful attempts were made to repair the system over the course of the following year, the plaintiff finally informed the defendant that the generator was not powerful enough to operate both the air-conditioning units and told him the only way to make it function properly was to remove one of the units. The defendant also experienced a problem with water accumulating inside the van. After determining that the water was being thrown into the van through an opening in one of the tire wells, he attempted to have the opening welded closed, only to learn that the metal body of the van was too thin to hold a weld. Finally, on March 13, 1980, one of the display racks inside the van pulled loose from the wall and fell under the weight of the tools which were stored on it. There was testimony that this occurred because the rivets which were used to attach the shelves were inadequate for this purpose. The defendant acquired another display van from another company on March 28, 1980; and on March 30, he informed the plaintiff that he did not intend to make any more payments on the lease. The plaintiff accordingly repossessed the vehicle and, several months later, filed this lawsuit.

The only evidence presented by the plaintiff to establish the amount of the defendant's alleged liability was the testimony of its vice-president and general manager, who admitted that he had no direct knowledge of the status of the account. Asked to state the

number of payments made by the defendant, the manager responded, "I think he paid through December, so that's 18 months." It is apparent that this witness' testimony concerning the amount of the defendant's alleged indebtedness under the lease was derived not from an examination of any books of account or other records prepared in the ordinary course of the plaintiff's business but rather from a summary which had been prepared by some unknown person in support of the plaintiff's demand for payment. This summary was not shown to be a business record within the meaning of OCGA § 24-3-14 (Code Ann. § 38-711). Furthermore, the witness admitted that three months after repossessing the vehicle, the plaintiff released it to another person for a monthly rental greater than that which the defendant had contracted to pay; and the plaintiff's figures did not even purport to take this rental income into account.

In this appeal, the plaintiff enumerates 25 alleged errors; however, many of these are redundant and most have been grouped together by the plaintiff for purposes of argument. None of the enumerations of error were initially referenced to the record or transcript as required by Rule 15 (c) (3) (i) (Code Ann. § 24-3615) of this court, although such references were eventually provided by way of a second supplemental brief filed after oral argument in the case. *Held:*

1. The trial court did not err in granting the defendant's motion for directed verdict on the complaint, as the plaintiff's evidence with respect to damages was wholly inadequate to support a verdict in its favor in any amount.

2. The evidence was sufficient to authorize the jury to conclude that the defendant was fraudulently induced to enter into the contract by the plaintiff's deliberate misrepresentations as to whether it intended to repair the vehicle if something should "go wrong." "A promise made without a present intention to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud." *Middlebrooks v. Lonas,* 246 Ga. 720, 721 (272 SE2d 687) (1980). A lack of present intention to perform may be inferred in this case from the evidence that the lease agreement was altered by the plaintiff after the defendant signed it, so as to reflect that the defendant had assumed responsibility for repairs. It follows that the jury was authorized to award punitive damages.

3. In response to an objection by the plaintiff to the qualifications of a witness called upon by the defendant to offer an opinion as to the adequacy of the rivets used to attach the shelving to the inside of the van, the trial court erroneously ruled that the qualifications of an expert are for the jury to determine rather than for the court. "Whether or not a witness is allowed to testify as an

expert is a question for the sound discretion of the trial court . . . [Cits.]" *Rose Mill Homes, Inc. v. Michel,* 155 Ga. App. 808, 809 (273 SE2d 211) (1980). The error was harmless in this case, however, since the witness clearly demonstrated a familiarity with the type of rivet in question, based on his previous experience in repairing airplanes. Furthermore, there was no real dispute over the fact that the rivets were inadequate to support the fully tool-laden shelves.

4. The plaintiff contends that the verdict was invalid because the jury did not specify whether the award of actual damages was for fraud or for breach of contract. "A general verdict is to be construed in the light of the pleadings, the issues made by the evidence, and the charge of the court; all presumptions are in its favor. [Cits.]" *Price v. Ga. Indus. Realty Co.,* 132 Ga. App. 107, 108-109 (207 SE2d 556) (1974). No issue as to the form of the verdict was raised at trial, and consequently no such issue may now be raised on appeal. See generally *Barlow v. Story,* 120 Ga. App. 48 (4) (169 SE2d 660) (1969); *Folds v. Reese,* 140 Ga. App. 291, 292 (231 SE2d 808) (1976). The holding in *Marriott Corp. v. American Academy of Psychotherapists,* 157 Ga. App. 497 (2) (277 SE2d 785) (1981), is not authority to the contrary, as the issue there was the correctness of a jury charge which had been the subject of a timely and proper objection at trial.

5. The court did not err in reducing the award of actual damages from $4,500 to $4,043.28 to reflect the amount of actual damages shown by the evidence. During their deliberations, the jury asked to see a piece of paper which defendant's counsel had used during his closing argument to summarize the total actual damages allegedly shown by the defendant's evidence, but the court declined the request because the document was not in evidence. It is clear from this context that the jury intended to award all the actual damages claimed by the defendant but was unable to remember the exact amount. Under these circumstances, it was permissible for the court to reduce the award to reflect that amount. "The authority given a trial judge to amend a judgment to conform to the reasonable intendment of the verdict constitutes an exception to the rule of Code § 110-111 [OCGA § 9-12-7] that, 'A verdict may be amended in mere matter of form after the jury have dispersed; but after it has been received and recorded, and the jury dispersed, it may not be amended in matter of substance, either by what the jurors say they intended to find or otherwise.' " *Turley v. Turley,* 244 Ga. 808, 809 (262 SE2d 112) (1979). In a case such as this, where the jury's intendment appears plainly from the record of the proceedings in the case, the trial court does not abuse its discretion in fashioning its judgment to conform to that intendment.

6. The trial court did not err in denying the plaintiff's motion to

dismiss the defendant's counterclaim for failure to state a claim upon which relief could be granted or for failure to comply with the court's order requiring a more definite statement of the facts giving rise to the allegation of fraud.

7. The remaining enumerations of error are either rendered moot by the foregoing or are deemed abandoned pursuant to Rule 15 (c) (2) (Code Ann. § 24-3615) of this court, due to the plaintiff's failure to support them with any citation of authority or meaningful argument.

8. The appellee's motion for imposition of damages pursuant to OCGA § 5-6-6 (Code Ann. § 6-1801) for filing a frivolous appeal is denied.

*Judgment affirmed. Deen, P. J., concurs. Carley, J., concurs in the judgment and in all divisions except Division 7.*

DECIDED OCTOBER 28, 1983 —
REHEARING DENIED NOVEMBER 16, 1983 —

*H. William Cohen, Stephen M. Forte,* for appellant.
*Richard G. Greer, J. Blair Craig II,* for appellee.

ON MOTION FOR REHEARING.

On motion for rehearing, the plaintiff contends that we have overlooked the trial court's failure to give a requested charge that "exemplary damages can never be allowed in cases arising on contracts." The plaintiff has never disclosed to this court the location of this request to charge in the record or transcript, as required by Rule 15 (c) (3) (i) (Code Ann. § 24-3615) of this court, nor is its location disclosed by the index to the record on appeal. We shall, nevertheless, examine the merits of the alleged request.

The defendant's counterclaim was, of course, based not merely on breach of contract but also on fraud; and the requested charge could easily have misled the jury into believing that exemplary damages were not recoverable for fraudulent conduct arising from contractual negotiations. "A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; . . . it must not be so phrased as to have tendency to confuse and mislead the jury or to becloud the issues in the case. [Cits.]" *Cohen v. Sapp,* 110 Ga. App. 413 (2), 415 (138 SE2d 749) (1964).

The court correctly instructed the jury that damages for breach of contract were allowable only as compensation for injuries sustained. The instruction on punitive or exemplary damages was

given in conjunction with an entirely separate charge on damages for fraud and misrepresentation and was clearly applicable only to this theory of recovery. The plaintiff did not object to the court's instructions on damages at trial and will not now be heard to raise such an objection on appeal.

The plaintiff further asserts on motion for rehearing that during cross-examination the defendant admitted he had not relied on any misrepresentations which may have been made to him before he signed the contract. The plaintiff refers specifically to the following exchange: "Q: You have no contention that the lessor, that Gateway Leasing, was to do anything different than what their contract actually shows on it, do you? A. No, sir."

It appears from the testimony immediately preceding this exchange that the defendant was quite confused as to what he was being asked and very likely believed the question referred to the contract document as it existed when he signed it rather than as subsequently completed by the plaintiff. The jury was not required to interpret the exchange as a repudiation of his prior testimony regarding the representations made to him by the plaintiff's sales agent, and the evidence did not demand a verdict in the plaintiff's favor on the fraud claim.

*Motion for rehearing denied.*