## 70125. OSBURN v. HARBISON et al.
### (333 SE2d 429)

BEASLEY, Judge.

Osburn d/b/a Southern Electric filed suit against Harbison d/b/a A & J Motors and the Blackshear Bank, contending that Harbison contracted for him to build a garage and body shop on a tract of land owned by Harbison and that construction was completed May 25, 1983; that Harbison owed him $169,000 which he has refused to pay; and that Osburn's claim of lien had been filed on August 15. Osburn further alleged that the bank had on May 5 loaned Harbison $75,000 to complete construction and to be used to purchase automobiles in exchange for which Harbison executed a deed to secure debt to the bank conveying the land as security for the debt; that two further loans were made under the open-end clause of the deed to secure debt; and that the bank had actual notice of the construction in progress and of his lien claim so that the latter was superior to the bank's deed to secure debt. Asserting that Harbison and the bank conspired to defeat his lien on the property by arranging to have the loan proceeds paid by Harbison to the bank in liquidation of other debts of Harbison not secured by the land, Osburn sought an injunction to prevent foreclosure of the deed to secure debt, judgment in the amount of $169,000 plus interest and costs, and a declaration that his lien was superior to the bank's deed to secure debt.

Harbison denied that he contracted with Osburn for construction of the building, claiming instead that they were partners in the venture with each providing money and manpower. He denied that he

owed Osburn any money or that he conspired with the bank. By counterclaim, Harbison sought judgment against Osburn as his partner in A & J Motors for one-half of the proceeds of the sale by Osburn, without Harbison's authority or consent, of $100,000 worth of used cars belonging to the partnership which Osburn converted to his own use and refused to deliver.

The bank's response, denying that it conspired with anyone, contended that it loaned Harbison the money after examination of the county real estate records upon the strength of its first lien of a deed to secure debt, and that although it knew the construction was in progress, it had no knowledge that Osburn was the contractor but believed he was a co-venturer as partner or otherwise and so was not entitled to any lien. The bank further asserted that Osburn had accepted a warranty deed to an individual interest in the property, expressly subject to the bank's deed to secure debt and, with full knowledge of it, had accepted a deed to secure debt to an individual interest in the property.

The jury verdict found that the bank "has the superior lien," awarded Osburn $40,000 and gave "no dollar amount" to Harbison on his counterclaim for the car sales. When asked by the court, no party had any objection to the form of the verdict. The court's judgment, prepared by the bank's counsel and "approved as to form and content" by all counsel, denied injunctive relief, awarded $40,000 in favor of Osburn and against Harbison, ordered "that the lien of . . . Osburn . . . as a contractor to the amount of said principal, interest and costs, be set up and established upon" the property subject to the bank's lien, and dismissed Harbison's counterclaim. Osburn filed a motion for new trial on the general grounds, and when it was denied, he appealed, again asserting only the general grounds. Harbison did not file a brief; only the bank did so.

The gist of appellant's argument is that the verdict and judgment in his favor on the contractor's lien demanded a finding that he was not a partner or co-venturer with Harbison, and therefore his lien was superior to the bank's and entitled him to the full $169,000 he claimed. The voluminous trial transcript reveals evidence of a business relationship between appellant and Harbison which was informal, imprecise, and undocumented.

There was no written contract, blueprint, or plans for the construction of the building. It appears rather that plaintiff Osburn dismantled and moved an existing building to the tract of land which land he had sold to Harbison several months earlier for use by A & J Motors, and there reassembled and enlarged the building. While Osburn acknowledged that he had provided $20,000 to Harbison for use in this automobile business, he contended that this was a loan with the agreement that he was to be paid $100 for each car he sold, but

there was no written agreement and no provision for collateral. There was also evidence that Osburn had sold at least twenty-six vehicles belonging to A & J Motors for over $50,000 and retained thirteen others. Virtually all of his business was transacted in cash, with no books, accounts, records, invoices or cancelled checks (except one check for $3,500 made payable to cash) to support his claim of $169,000 for the building. Although there was evidence of the value of the building, there were no documents regarding the amounts expended or due; only imprecise testimony supported his money claim.

Other exhibits introduced into evidence were a warranty deed to the property back from Harbison to Osburn and one Hatfield, identified as the legal assistant of Osburn's attorney, a deed to secure debt from Harbison and Hatfield to Osburn, a promissory note between the same parties and certain financial statements. These documents purport to convey to Osburn and Hatfield a two-thirds individual interest in the land, and to secure the payment of a demand note for $175,000. The warranty deed specifies that it "is subject to and inferior to that certain deed to secure debt" from Harbison to the bank.

"Verdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." OCGA § 9-12-4. The jury's verdict was in keeping with the pleadings, evidence, and the careful and unobjected-to charge of the court in which it fully explained the applicable law. All evidence and every presumption and inference must be construed towards upholding the verdict. *Pepsi Cola Bottling Co. v. First Nat. Bank*, 248 Ga. 114 (1) (281 SE2d 579) (1981).

There were numerous issues with conflicting evidence. The jury apparently found that plaintiff Osburn was a contractor and not a partner or co-venturer and so was entitled to a lien; that the lien was perfected in substantial compliance with the statutory requirements, that the bank's lien was superior because the bank did not have actual knowledge that Osburn was merely a contractor although it had knowledge that construction was in progress; that the purported conveyance back to Osburn was deficient so as not to render him an owner and thus be precluded from asserting a construction lien; and that Osburn proved an unpaid debt of only $40,000. The jury further found that Harbison did not prove his counterclaim against Osburn regarding the car sales business. Although the jury did not expressly and separately state that they found that Osburn had a perfected lien, they clearly implied so, wording their verdict in the manner directed by the court in its charge, to which no party objected. Verdicts are to have a liberal construction. *Law v. Coleman*, 173 Ga. 68 (1) (159 SE 679) (1931). The judgment is to be fashioned to conform to the intendment of the jury as it appears from the record. *Gateway Leasing Corp. v. Heath*, 168 Ga. App. 858 (5) (310 SE2d 549) (1983).

And that is how everyone understood it. The judgment, entered several weeks later, evidences that all agreed that it followed the verdict. That is what it must do. OCGA § 9-12-9; *Taylor v. Taylor*, 212 Ga. 637 (1) (94 SE2d 744) (1956).

Moreover, appellant waived the right to complain by expressly indicating "no objection" before the jury was dispersed, *Todhunter v. Price*, 248 Ga. 411, 412 (1) (283 SE2d 864) (1981), and by approving the judgment as to form and content before it was entered by the court. See *Wright v. Thompson*, 236 Ga. 655 (1) (255 SE2d 226) (1976); *Bennett v. Bennett*, 210 Ga. 721 (2) (82 SE2d 653) (1954); *Folds v. Reese*, 140 Ga. App. 291 (1) (231 SE2d 808) (1976). "[O]ne cannot complain of a judgment that by his own agreement he has aided in causing. [Cit.]" *Blakely & Son v. Humphreys*, 148 Ga. App. 281, 283 (250 SE2d 826) (1978). Of course, this would not be a waiver of the right to challenge the substance of the verdict, i.e., the sufficiency of the evidence.

The verdict and the judgment are supported by the evidence, are consistent with it, and are not contradictory or repugnant in any manner. *Jackson v. Houston*, 200 Ga. 399 (1) (37 SE2d 399) (1946); *Minor v. Ray*, 127 Ga. App. 1, 2 (193 SE2d 41) (1972). While a later-filed lien can be superior to an earlier recorded construction to a deed to secure debt, that would only occur where a particular circumstance, such as actual notice of the claim of lien, was proved. *Gellis v. B.L.I. Constr. Co.*, 148 Ga. App. 527, 528 (1) (251 SE2d 800) (1978).

As to Osburn's contention that the $40,000 award was arbitrary, deficient, and inadequate, he has no basis for a new trial. What was deficient was his own evidence; as plaintiff, he was required to show not only what the building was worth, but what amount was still owed to him for its construction. He is not entitled to a new trial because of the inadequacies of his own evidence.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 10, 1985.

*Leon A. Wilson II*, for appellant.
*J. Baker McGee, John R. Thigpen, Sr.*, for appellees.