**UNITED STATES of America**

**v.**

**Jerome BUSHAY, et al., Defendants,**

**Nugen Motor Sports, Inc., Claimant.**

**Criminal No. 1:10–cr–521–2–TCB.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Aug. 5, 2014.

Dahil Dueno Goss, George Jeffrey Viscomi, Jeffrey W. Davis, Libby Skye Davis,

U.S. Attorney's Office, Atlanta, GA, for United States of America.

Otis Henry, Lovejoy, GA, pro se.

Mark Tomlinson, Lawrenceville, GA, pro se.

Roshaun Hood, Beaumont, TX, pro se.

Jermaine Campbell, Decatur, GA, pro se.

Ricardo Duncan, Conyers, GA, pro se.

Dave Grant, Folkston, GA, pro se.

Christopher Williams, Smyrna, GA, pro se.

Damien Aarons, Lexington, KY, pro se.

Conrad Harvey, Philipsburg, PA, pro se.

L. Burton Finlayson, Office of L. Burton Finlayson, Kendal Demetrius Silas, Federal Defender Program Inc., R. Gary Spencer, R. Gary Spencer, P.C., Robert H. Citronberg, Law Office of Robert Citronberg, P. Bruce Kirwan, Office of P. Bruce Kirwan, Steven Paul Berne, Law Offices of Steven Berne, Jay Lester Strongwater, Strongwater & Associates, LLC, Akil K. Secret, The Secret Firm, P.C., R. Allen Hunt, Law Office of R. Allen Hunt, Atlanta, GA, Michael David Mann, Law Office of Michael D. Mann, Roswell, GA, Frederick R.J. Jackson, Frederick R.J. Jackson, Attorney at Law, Decatur, GA, Arturo Corso, Corso, Kennedy & Campbell, Gainesville, GA, for Defendants.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

## I. Background

On October 1, 2010, law-enforcement officers executed a search warrant at the residence of Otis Henry and Sara Scott. Their search uncovered a large quantity of illicit drugs, some of which were in the garage just a few feet from where a white 2007 Audi Q7 was parked. The officers seized both the drugs and the Audi. They later learned that the Audi was registered to Claimant Nugen Motor Sports, Inc. Even so, the Audi was not returned to Nugen.

In December, a federal grand jury indicted Henry (and others) for numerous drug-related offenses.[1] The indictment listed the Audi among the property to be forfeited. Because he fled the jurisdiction, Henry was not arrested until January 2012.

At first, Henry entered a plea of not guilty. But on July 24, 2013, he changed his plea, pleading guilty to conspiracy to knowingly and willingly possess with intent to distribute a controlled substance. As part of his plea agreement, Henry acknowledged that the Audi was forfeitable and agreed to forfeit any interest in it.

After accepting his plea, the Court entered a consent preliminary order of forfeiture, forfeiting any legal interest that Henry had in the Audi. The Court found that the United States had established the necessary nexus between the Audi and the illegal drug conspiracy to which Henry pleaded guilty. That is, the Court found that the Audi constituted proceeds of the conspiracy or that Henry used or intended to use the Audi to carry out the conspiracy.

On August 1, the United States notified Nugen's attorney about the Audi's forfeiture and Nugen's right to assert a claim in an ancillary proceeding. Nugen timely requested a hearing to adjudicate its interest in the Audi. At the parties' request, the

---

1. At that time, the second named Defendant was identified as FNU LNU a/k/a "Otis." Otis Henry's full name would not be added until the fourth superseding indictment in December 2012. *Compare* [1], *with* [650].

Court authorized discovery under the Federal Rules of Civil Procedure. Both the United States and Nugen now move for summary judgment [866, 890].[2]

## II. Criminal Forfeiture and Ancillary Proceedings

Criminal forfeiture is a form of punishment that applies to certain federal drug-law offenses and thus is imposed following conviction. *Libretti v. United States,* 516 U.S. 29, 39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). Criminal-forfeiture proceedings are primarily governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. *United States v. Davenport,* 668 F.3d 1316, 1320 (11th Cir.2012). Because criminal forfeiture is an *in personam* action based on the government's seizure of the defendant, district courts can only enter forfeiture orders against the property, or portion thereof, in which the defendant has an interest. *United States v. Gilbert,* 244 F.3d 888, 919 (11th Cir.2001). Put simply, forfeiture helps ensure that crime doesn't pay.

When a person, like Henry, is convicted of a federal drug offense punishable by more than one year of imprisonment, the district court must enter an order forfeiting "(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [the] violation; [and] (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, [the] violation." § 853(a)(1)–(2); *see also United States v. Marion,* 562 F.3d 1330, 1335 (11th Cir.2009). This "preliminary forfeiture order does not consider third-party interests," so the district court "must amend the final order of forfeiture to ex-

empt the *qualifying* interest of third-parties." *United States v. Ramunno,* 599 F.3d 1269, 1273 (11th Cir.2010).

Following the entry of a preliminary forfeiture order and notice by the United States, *see* § 853(n)(1), a third party may claim an interest in forfeited property only by timely petitioning the court for an ancillary proceeding, *Davenport,* 668 F.3d at 1320. This petition must be verified and "shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." § 853(n)(3).

The sole purpose of an ancillary criminal forfeiture proceeding is to determine the petitioner's legal interests in the forfeited property. *Davenport,* 668 F.3d at 1321. If the petitioner proves that he has a valid, superior interest in the forfeited property, then the court must exclude it from the final forfeiture order. *Id.* at 1320.

To prevail in an ancillary proceeding under § 853(n), the petitioner must establish by a preponderance of the evidence that

(A) the petitioner has a legal right, title, or interest in the property ... [that] renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfei-

---

**2.** Docket entry 890 is Nugen's amended motion for summary judgment and was filed the

day after its initial motion.

ture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

§ 853(n)(6)(A)–(B). Here, therefore, the Court can exclude the Audi from the final forfeiture order only if Nugen proves that its legal interests in the Audi were superior to Henry's when the United States' interests vested [3] or that Nugen purchased the Audi "without cause to believe that [it] was subject to forfeiture." *United States v. Soreide,* 461 F.3d 1351, 1354–55 (11th Cir.2006).

Nugen's petition posits that it has a superior interest in the Audi and that it is a bona fide purchaser for value. To succeed on it superior-interest theory, Nugen must show that it has a legal interest in the Audi that was superior to Henry's when the Audi became forfeitable. *Shefton,* 548 F.3d at 1364.

The bona fide purchaser provision of subsection (n)(6)(B) does not apply to Nugen. That subsection "asks whether a third party petitioner ever became a bona fide purchaser for value of *the defendant's interest* in the subject property." *United States v. Kennedy,* 201 F.3d 1324, 1330 (11th Cir.2000). Nugen claims that it purchased the Audi from Triple M Auto Consultants, not Henry, and that Henry never had any interest in the Audi. This subsection is thus inapplicable. After all, it applies only to forfeitable property under § 853, and if Nugen is correct, then Henry had no interest in the Audi to forfeit.

One final point. In its petition, Nugen appears to challenge whether the Audi was forfeitable. For example, Nugen alleges that "[t]he Government seized the Audi and included it in the Forfeiture Provision of this indictment even though no defendant in this case had any legal interest in, or claim to, the Audi" and that "[t]he Government has never made any specific factual allegations that would justify seizure or forfeiture of the Audi."

These allegations, even if true, are beside the point. Nugen cannot litigate whether the Audi was forfeitable. *Davenport,* 668 F.3d at 1321. The reason is simple: "if the [Audi] really belongs to [Nugen], [it] can prevail and recover [the Audi] during the ancillary proceeding 'whether there were defects in the criminal trial or the forfeiture process or not; and if the [Audi] does not belong to [Nugen], such defects in the finding of forfeitability are no concern of [its].'" *Id.* (quoting *United States v. Andrews,* 530 F.3d 1232, 1237 (10th Cir.2008)).

## III. Discussion

### A. Legal Standard

■ Although ancillary proceedings arise out of a criminal prosecution, they are civil in nature and are governed by the Federal Rules of Civil Procedure. *See Gilbert,* 244 F.3d at 907. The parties may thus move for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed.R.Crim.P. 32.2(c)(1)(B).

Summary judgment is proper when no genuine issue about any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under

---

**3.** "'All right, title, and interest' in the forfeited property 'vests in the United States upon the commission of the act giving rise to forfei-

ture.'" *United States v. Shefton,* 548 F.3d 1360, 1363 (11th Cir.2008) (quoting § 853(c)).

the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## B. Standing

As a threshold matter, Nugen must establish Article III standing before its claim can be adjudicated. *Davenport,* 668 F.3d at 1319. At its core, Article III standing is focused on the existence of a concrete and particularized injury, *Via Mat Int'l S. Am. Ltd. v. United States,* 446 F.3d 1258, 1262 (11th Cir.2006), though it also requires proof of causation and redressability, *Lujan v. Defenders of Wildlife,* 504 U.S. 555,

560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Each element of standing must be supported "in the same way as any other matter on which the plaintiff bears the burden of proof" at that stage of the litigation. *Id.* at 561, 112 S.Ct. 2130.

 In an ancillary criminal forfeiture proceeding, "[o]wnership of property that has been seized can be evidence of the existence of an injury that is direct enough to confer [Article III] standing, but ownership is not required"; a possessory interest in property, especially where accompanied by economic harm, can also support constitutional standing. *Via Mat,* 446 F.3d at 1262.

 Nugen must also establish statutory standing. In an ancillary criminal forfeiture proceeding, these requirements derive from § 853(n)(2). That section is clear that only a person other than the defendant with a "legal interest" in the forfeited property may petition the court. To have statutory standing, therefore, Nugen must be able to prove that it has a legal interest in the Audi. And while the nature of Nugen's interest is a question of state law, whether its legal interest is sufficient to establish standing is a question of federal law. *See Shefton,* 548 F.3d at 1364.

The parties dispute whether Nugen has constitutional and statutory standing to challenge the Audi's forfeiture. The United States argues that Nugen lacks standing for two reasons: first, forfeiture will not cause Nugen a constitutionally cognizable injury; and second, Nugen is a mere nominee titleholder of the Audi. Nugen, on the other hand, contends that it obviously has standing for two reasons: first, it is the titled owner of the Audi; and second, Henry never had any legal interest in the Audi because his right to possession derived from an unwritten, three-year lease (or lease-purchase agreement) with Nu-

gen, which went into default when he stopped making his payments.

These arguments thus invite two questions: (1) can Nugen prove that it owned the Audi? and (2) can Nugen prove that it still owned the Audi after its oral agreement with Henry? The answer to both questions is no.

### 1. Nugen's Ownership of the Audi

■ Generally, where state law recognizes that a petitioner has an ownership interest in forfeited property, the petitioner has Article III and statutory standing in an ancillary criminal forfeiture proceeding. After all, defendants cannot forfeit interests they don't have, *see Gilbert,* 244 F.3d at 919, so the preliminary forfeiture order should be amended to exclude the petitioner's property, *see Davenport,* 668 F.3d at 1321.[4]

■ Here, the Audi's certificate of title lists Nugen as the owner. Under Georgia law, this is prima facie evidence of ownership. *See* O.C.G.A. § 40–3–24(c). This certificate, however, "is not the title or ownership itself but only evidence of it." *Owensboro Nat'l Bank v. Jenkins,* 173 Ga. App. 775, 328 S.E.2d 399, 402 (1985). For this reason, Nugen's evidence of ownership "can be contradicted by other evidence." *Kirkland v. Crawford,* 136 Ga.App. 388, 221 S.E.2d 482, 483 (1975).

To contradict Nugen's prima facie evidence of ownership, the United States relies on the testimony of Paul Hue, Nugen's owner. Hue testified that he

- purchased the Audi from Triple M Auto Consultants;
- paid the entire purchase price—$36,-593.25—from a hoard of cash in his home;
- used his own funds rather than Nugen's;
- has no bill of sale showing that Nugen purchased the Audi from him;
- titled the Audi in Nugen's name despite purchasing it with his money, and when asked to explain, replied, "I didn't think about it"; and
- insured the Audi in his name.

Also, the bill of sale that allegedly shows that Triple M sold the Audi to Nugen lists "Paul C. Hue" as the buyer and lacks any notation that Hue executed it as Nugen's representative.

Nugen adduces no evidence to contradict Hue's testimony. Instead, it tries to downplay the distinction between Hue and Nugen. After noting Hue's role as owner and chief executive officer, Nugen claims that Hue bought the Audi for Nugen and titled it in the corporation's name. Nugen thus concludes that in purchasing the Audi, Hue "merely acted in his capacity as the legal representative and owner of Nugen." Or to put the point differently, "Hue and Nugen share essentially the same interest in the Audi."

■ Nugen's argument is meritless. The foundational principle of corporate law is that corporations are legal entities distinct from their shareholders, directors,

---

4. To be clear, this does not mean that criminal-forfeiture orders under § 853 are valid only against property in which the defendant had a legal interest. Suppose, for example, that a preliminary forfeiture order includes property to which the defendant has no legal interest. The Government, unaware of the error, properly provides notice of the order, but the statutory-response period expires without the third-party owner petitioning for a hearing to determine its interest in the property. In that case, under § 853(n)(7) "the United States obtains clear title to the property.... Likewise, [Criminal] Rule 32.2(c)(2) provides that a third party who fails to file a timely petition may not object when the preliminary order of forfeiture becomes the final order of forfeiture." *Marion,* 562 F.3d at 1336–37.

officers and employees. *Dep't of Transp. v. McMeans,* 294 Ga. 436, 754 S.E.2d 61, 63 (2014). This is no less true when a corporation is wholly owned by one individual. *Id.* Nor is this principle "altered by the fact that the sole owner uses and controls the corporation to promote the owner's ends." *Id.* As a result, Hue's interest in the Audi cannot be "essentially the same" as Nugen's.

■ Additionally, Nugen cites no authority for the proposition that a corporation owns property bought with its sole shareholder's personal funds where the transaction was evidenced by a contract to which the corporation was not a party. Indeed, Georgia law is to the contrary: "It is axiomatic that 'each corporation is a separate entity, district and apart from its stockholders ... [and] that a person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms.'" *Levy v. Reiner,* 290 Ga.App. 471, 659 S.E.2d 848, 851 (2008) (alterations in original) (quoting *Plaza Props., Ltd. v. Prime Bus. Invs., Inc.,* 240 Ga.App. 639, 524 S.E.2d 306, 309 (1999) (citations omitted) (quotation marks omitted)).

Accordingly, Hue's testimony and the bill of sale showing that the Audi was sold to Hue in his personal capacity rebut Nugen's prima facie evidence of ownership. Importantly, Nugen has neither argued nor presented any evidence that there is a jury question about its ownership of the Audi. At bottom, Nugen is nothing more than a nominee titleholder. Thus, forfeiture will only strip Nugen of prima facie evidence that it owns the Audi. This is not a constitutionally sufficient injury to confer standing to pursue an amendment of the preliminary forfeiture order. *See U.S. v. Weiss,* 467 F.3d 1300, 1308–09 (11th Cir. 2006) (holding that petitioner with bare legal title lacks standing to challenge forfeiture of property).[5]

### 2. The Nature of Nugen's Interest in the Audi After Its Oral Agreement with Henry

■ Even if Nugen had owned the Audi when it was titled in Nugen's name, Nugen would still lack statutory standing. Nugen treats its unwritten agreement with Henry as either a lease or lease-purchase agreement and concludes that it retained ownership of the Audi until Henry paid the full purchase price of $42,593.25 ($36,593.25, the amount Nugen paid Triple M, plus a $6,000 financing fee). Nugen thus contends that it is still the owner of the Audi.

---

**5.** In explaining why bare legal title may not establish standing to contest a forfeiture, the Eleventh Circuit underscored that those involved in illicit drug enterprises often use "strawman" owners.

"The rationale for the rule that bare legal title may be insufficient [for standing] is based on a candid determination that things are often not what they appear to be, especially in the world of drug trafficking.... In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name.

\* \* \*

In short, courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs or illegal dealings of someone else."

*United States v. Carrell,* 252 F.3d 1193, 1204 (11th Cir.2001) (alterations in original) (quoting *United States v. 900 Rio Vista Blvd.,* 803 F.2d 625, 630 (11th Cir.1986)) (internal quotation marks omitted).

■ To be sure, an owner's legal interest in property does not evaporate upon entering into a lease with a defendant whose offense conduct gives rise to criminal forfeiture. So lessors have standing to pursue the return of their property in an ancillary proceeding. *Cf. United States v. 5000 Palmetto Drive*, 928 F.2d 373, 375 (11th Cir.1991) (upholding district court's finding that third-party owner of real property used to facilitate possession and distribution of cocaine had standing to challenge civil forfeiture even though owner permitted defendant to live on property rent-free).

Yet even construing Hue's testimony and Nugen's opposition brief favorably, Nugen cannot show that it still owned the Audi after its oral deal with Henry. Because Nugen's arrangement with Henry is unwritten, the details of it come from Hue's testimony.

In its opposition brief, Nugen describes the deal this way:

On July 3, 2010, Nugen purchased the Audi from Triple M. On July 8, 2010, Nugen applied for a Georgia title on the Audi. On July 13, 2010, Nugen acquired legal title to the Audi by purchasing it from Triple M Auto Consultants. Nugen subsequently agreed to lease the Audi to Henry for 36 months at $1,200 per month until he paid the total purchase price of $36,593.25, plus a financing charge of $6,000.

The question then is, what sort of agreement did Nugen have with Henry? Georgia law permits three possible answers: a lease-purchase agreement,[6] a lease,[7] and a disguised security agreement.

■ Nugen's deal with Henry is not a lease-purchase agreement. Georgia law defines *lease-purchase agreement* as "an agreement for the use of personal property by a lessee primarily for personal, family, or household purposes for an initial period of four months or less that is renewable with each payment after the initial period and that permits the lessee to become the owner of the property." O.C.G.A. § 10–1–681(1). Nugen's oral agreement with Henry has no "initial period"; it has a term of thirty-six months, though Henry can pay his debt off sooner. Thus, regardless of how Nugen characterizes this agreement, it is not a lease-purchase agreement.[8]

---

**6.** Nugen expressly refers to its deal with Henry as a "lease-purchase agreement" at least once in its opposition brief. *See* [882] at 14 ("Nugen has consistently maintained that ... it intended to make a profit by selling the Audi to Henry pursuant to a lease-purchase agreement."). It also refers to the deal as a "lease-option purchase agreement" on several occasions. *See, e.g., id.* at 16 ("Nugen contends that it intended to make a profit by selling the Audi to Henry pursuant to a lease-option purchase agreement.").

**7.** Nugen calls the deal a "lease" several times in its opposition brief.

**8.** There is another reason this deal is not a lease-purchase agreement: it qualifies as a credit sale under the applicable federal law and regulation. *See* O.C.G.A. § 10–1–681(1)(A) ("Lease-purchase agreements shall not include ... [a] lease or agreement which constitutes a credit sale" under the Federal Truth–in–Lending Act and Regulation Z.).

The Truth–in–Lending Act defines *credit sale* as

any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

15 U.S.C. § 1602(h).

Similarly, Regulation Z defines *credit sale* as

a sale in which the seller is a creditor. The term includes a bailment or lease (unless

Nugen's deal with Henry is not a lease. The Uniform Commercial Code governs security interests and leases. Article 1 defines *security interest* as "an interest in personal property or fixtures which secures payment or performance of an obligation." *Id.* § 11–1–201(37). Article 2A defines *lease* as "a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease." *Id.* § 11–2A–103(j). The UCC thus distinguishes between a security interest and a lease.

■ The specific facts of a transaction determine whether a security interest or a lease is created. But a security interest exists

if [ (1) ] the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and ... [ (2) ] t]he lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

*Id.* § 11–1–201(37).

■ Georgia courts interpret this provision to create a bright-line two-part

terminable without penalty at any time by the consumer) under which the consumer—
 (i) Agrees to pay as compensation for use a sum substantially equivalent to, or in excess of, the total value of the property and service involved; and
 (ii) Will become (or has the option to become), for no additional consideration or for nominal consideration, the owner of the property upon compliance with the agreement.
12 C.F.R. § 226.2(a)(16).
Here, the agreement plainly requires Henry to pay the full value of the Audi and provides that he will become the Audi's owner for no additional consideration upon payment of the purchase price. *See* [882] at 21 ("Nugen and Henry worked out a lease-option purchase

test. *Coleman v. DiamlerChrysler Servs. of N. Am., LLC,* 276 Ga.App. 336, 623 S.E.2d 189, 191 (2005). The first prong focuses on whether "the consideration the lessee owes under the agreement for the right to possess and use the vehicle for the term of the lease is subject to termination." *Id.* That is, whether the lessee "had the right to voluntarily terminate [the] payment obligation under the agreement." *Id.* The second prong focuses on whether the lessee has the right to purchase the property subject to the agreement for either no additional consideration or for nominal consideration, which the UCC specifically defines. *See id.* at 191–92; *see also* O.C.G.A. § 11–1–201(37)(x).

■ Even if the bright-line test fails to show that a security interest exists, courts must consider whether the facts and circumstances surrounding the agreement do so. In Georgia, a contract's true nature depends on its purpose rather than the name provided by the parties. *Mejia v. Citizens & S. Bank,* 175 Ga.App. 80, 332 S.E.2d 170, 172 (1985). In the end, the "key issue" in distinguishing a lease from a security interest is whether "the lessor retains a meaningful residual interest at the end of the lease term." [9] *Coleman,* 623

agreement for the Audi. Henry agreed to lease the Audi until he paid the full purchase price."). Their deal thus constitutes a credit sale under the Truth–in–Lending Act and Regulation Z.

9. On the meaningful-residual-interest question, Georgia courts consider two factors: "(1) whether the purchase option price is nominal; and (2) whether the agreement contains any provision for the lessee's acquisition of equity in the vehicle." *Aniebue v. Jaguar Credit Corp.,* 308 Ga.App. 1, 708 S.E.2d 4, 8 (2011) (quoting *In re QDS Components,* 292 B.R. at 342) (internal quotation marks omitted).

S.E.2d at 192 (quoting *In re QDS Compo-nents, Inc.*, 292 B.R. 313, 331 (S.D.Ohio 2002)) (internal quotation mark omitted). If so, the agreement is a lease; if not, not. *Id.*

Nugen cannot prove that its unwritten agreement with Henry was a lease under the bright-line test. On the first prong, Nugen offers no evidence that Henry "had the right to voluntarily terminate [his] payment obligation under the agree-ment"—to pay less than the full amount of consideration under the lease. *See Cole-man*, 623 S.E.2d at 191. On the contrary, Nugen contends that Henry acquired no interest in the Audi because he failed to make all of the payments under the agree-ment. *See, e.g.*, [882] at 18 ("Nugen bought the Audi and leased it to Henry with an option to purchase it. Henry never acquired any 'right, title, or interest' in the vehicle because he never exercised his op-tion to purchase by making the required payments.").

On the second prong, Nugen offers no evidence that Henry could purchase the Audi only after paying additional consider-ation. In fact, the evidence Nugen mar-shals supports the opposite conclusion. Nugen makes clear that if Henry paid $1,200 per month for thirty-six months (or whenever Henry paid the Audi's total pur-chase price of $43,200), then he would own the Audi. Nothing in the record suggests that Henry had to pay any consideration in addition to the total purchase price. Be-cause the agreement with Henry cannot satisfy either prong of the bright-line test, Nugen cannot prove that it is a lease un-der § 11–1–201(37).

Nor can Nugen use the circumstances surrounding its deal with Henry to prove that the agreement was a lease. Nugen is clear that it intended to sell the Audi to Henry for a profit. *See, e.g.*, [882] at 21 ("Hue intended to make a profit selling the

vehicle to Henry on a payment plan."). Nugen is also clear that at the end of the agreement its residual interest in the Audi would be nothing. That is, once Henry paid the Audi's full purchase price, he would own the Audi and receive title to it, though in the interim the Audi would re-main titled in Nugen's name. *Id.* ("Nugen did not intend to transfer title to Henry until Henry paid for the Audi.... Nugen and Henry worked out a lease-option pur-chase agreement for the Audi. Henry agreed to lease the Audi until he paid the full purchase price."). Nugen thus cannot prove that its agreement with Henry con-stitutes a lease under Georgia law.

\* \* \*

For these reasons, even under the best—case scenario—that Nugen owned the Audi when it was titled in Nugen's name—Nugen cannot prove that that it still had an ownership interest in the Audi after its oral deal with Henry. Indeed, even accepting the evidence that Nugen adduces as true, Nugen succeeds only in proving that its deal with Henry created an unperfected security interest. *See Suntrust Bank, Atlanta v. Atlanta Classic Cars, Inc.*, 249 Ga.App. 726, 549 S.E.2d 523, 525 (2001). And because Nugen has not perfected its interest in the Audi (as-suming it had an interest to perfect), it cannot now challenge the United States' vested interest. *See id.* Nugen thus lacks statutory standing to challenge the prelim-inary forfeiture order.

## IV. Conclusion

The United States' motion for summary judgment [866] is GRANTED. Nugen's motion for summary judgment and amend-ed motion for summary judgment [889 & 890] are DENIED.

Having resolved all petitions related to the consent preliminary order of forfeiture

entered against Defendant Otis Henry [769], that order shall become the final order of forfeiture.